**UNITED STATES of America, Plaintiff-Appellee,**

v.

**David John ODLAND, Defendant-Appellant.**

**No. 73-2124.**

United States Court of Appeals, Seventh Circuit.

Argued June 4, 1974.

Decided Aug. 21, 1974.

Certiorari Denied Dec. 23, 1974. See 95 S.Ct. 679.

John H. Lauerman, Franklyn M. Gimbel, Milwaukee, Wis., for defendant-appellant.

David B. Bukey and William J. Mulligan, Asst. U. S. Attys., Milwaukee, Wis., for plaintiff-appellee.

Before CLARK,* Associate Justice, and CUMMINGS and TONE, Circuit Judges.

CUMMINGS, Circuit Judge.

Defendant was indicted for importing 8.8 grams of cocaine into the United States from Colombia, in violation of 21 U.S.C. §§ 952(a) and 960. After a bench trial he was convicted and received a two-year sentence; in addition a special parole term of three years was imposed under 21 U.S.C. § 960.

Defendant's first argument is that about May 1, 1973, New York customs officials acted improperly in opening an envelope addressed to Patsy Klein, c/o Danial Schwartzman, 11990 Long Lake Drive, Wind Lake, Wisconsin 53185, U. S.A. from Medellin, Colombia. The envelope was found to contain 8.8 grams of a substance suspected to be cocaine. According to the record, this inspection occurred during the routine examination of mail parcels and envelopes arriving in the United States from abroad. We have examined the first class envelope in question and note that it is a thick red envelope enclosing a cardboard greeting card.

■ In denying reconsideration of its earlier order refusing to suppress evidence, the district court stated: "I think the right of a Customs authority to inspect at random is implicit in the way the country protects itself from untaxed invasions [importations]. It's also a proper way, in my judgment, for the Government to protect itself from the intervention of contraband. So I find no—I have no difficulty with the original opening of the letter at New York." We agree that the United States Bureau of Customs in New York was empowered to open this envelope as part of its continuing investigation of narcotics smuggling from foreign countries into the United States.

Defendant contends that the search was impliedly forbidden by 19 U.S.C. § 482. That statute provides:

"[O]fficers * * * authorized to * * * search vessels may * * * search any trunk or envelope, wherever found, in which he may have a reasonable cause to suspect there is [dutiable goods or contraband]."

We need not decide what constitutes "reasonable cause to suspect." This statute authorizes border searches; it also authorizes the search of trunks and envelopes "wherever found." It may be that when conducting searches away from the border, customs officials can rely only on this statute, and that the requirement of "reasonable cause to suspect" is then a limitation on their powers. But when searching at the border, customs officials may also rely on other statutes. For example, 19 U.S.C. § 1582 provides:

"The Secretary of the Treasury may prescribe regulations for search of persons and baggage * * * and all persons coming into the United States from foreign countries shall be liable to detention and search * * * under such regulations."

The implementing regulation is 19 CFR § 162.6, which reads in part:

"All persons, baggage, and merchandise arriving in the Customs territory of the United States from places outside thereof are liable to inspection and search by a Customs officer."

International mail is subject to a similar scheme of regulation. The statute guaranteeing confidentiality to first class mail applies only to mail "of domestic origin." 39 U.S.C. § 3623(d). The relevant regulation is 39 CFR § 61.- 1, which provides:

"All mail originating outside the customs territory of the United States is subject to customs examination, except [certain mail addressed to diplomats, international organizations and government officials.]"

It is clear that this regulation authorized the search involved here. The envelope was subject to search at the bor-

---

* Associate Justice Tom C. Clark of the Supreme Court of the United States (Retired) is sitting by designation.

der merely because it was entering the United States from abroad; no other fact, and no suspicion particular to this envelope, is necessary under the regulation.

We also conclude that this sweeping power to search is constitutional. Surprisingly, it appears that the Supreme Court has never been required to determine the permissible scope of searches of persons or goods entering the United States from abroad. Nor has this Court had many occasions to consider the issue, though we have indicated that border searches are different from other searches. See United States v. Kurfess, 426 F.2d 1017, 1020 (7th Cir. 1970); United States v. De La Cruz, 420 F.2d 1093, 1095 (7th Cir. 1970). We therefore turn to the settled law of the Circuits which deal with border searches regularly.

■ There is substantial authority in those Circuits stating the power to search at international borders in the same sweeping terms as the regulation. Any person or thing coming into the United States is subject to search by that fact alone, whether or not there be any suspicion of illegality directed to the particular person or thing to be searched. Klein v. United States, 472 F.2d 847, 849 (9th Cir. 1973); United States v. McDaniel, 463 F.2d 129, 132 (5th Cir. 1972); United States v. Stornini, 443 F.2d 833, 835 (1st Cir. 1971). This rule is supported by dicta in Supreme Court opinions:

"It would be intolerable and unreasonable if a prohibition agent were authorized to stop every automobile * * *. Travelers may be so stopped in crossing an international boundary because of national self protection reasonably requiring one entering the country to identify himself as entitled to come in, and his belongings as effects which may be lawfully brought in." Carroll v. United States, 267 U.S. 132, 153–154, 45 S.Ct. 280, 285, 69 L.Ed. 543.

"[I]t is clear that the [First Congress] did not regard searches and seizures [to collect duties] as 'unreasonable,' and they are not embraced within the prohibition of the [fourth] amendment." Boyd v. United States, 116 U.S. 616, 623, 6 S.Ct. 524, 528, 29 L.Ed. 746.

See also Almeida-Sanchez v. United States, 413 U.S. 266, 272, 93 S.Ct. 2535, 37 L.Ed.2d 596.

■ We conclude that the 1st, 5th and 9th Circuit cases cited above correctly state the law of border searches, and that mail is not exempt. Accordingly, the Government is free to spot-check incoming international mail at the port of entry, or to inspect all such mail, or to inspect any such mail which attracts the inspector's attention. We therefore do not reach the Government's alternative contention that this envelope and greeting card appeared suspicious. In holding that crossing a border is sufficient under the Fourth Amendment to justify this search, we of course express no view on what have been termed extended border searches or intrusive personal searches. See generally Note, "Border Searches and the Fourth Amendment," 77 Yale L.J. 1007 (1968).

We note that other courts which have considered searches of incoming international mail have reached similar results, although the Government advises that no previous case involved opening a first class letter. United States v. Doe, 472 F.2d 982 (2d Cir. 1973); United States v. Galvez, 465 F.2d 681 (10th Cir. 1972); United States v. Beckley, 335 F.2d 86 (6th Cir. 1964); State v. Gallant, Me., 308 A.2d 274 (1973); United States v. Feldman, 366 F.Supp. 356 (D. Haw.1973) (collecting cases).

■ Defendant's next point is that the affidavits were insufficient to support the search warrant for the Wind Lake, Wisconsin, residence where the incriminating materials were found.

The first affidavit was of Special Agent Wingert of the Bureau of Customs in Milwaukee. The affidavit stated that for eleven years part of his duties consisted of investigating the smuggling of narcotics into the United

States. About May 1st, his Milwaukee office was advised by the New York office of the Bureau of Customs that the previously discussed envelope "was found to contain approximately 8.8 grams of suspected cocaine." Also about May 1st, according to the affidavit, the envelope was forwarded in a certain locked mail pouch to the Postal Inspector in Madison, Wisconsin. Wingert examined the envelope and obtained a positive result upon testing it for cocaine content.

The second supporting affidavit was by Lee Wittke, a detective for the Racine County, Wisconsin, Sheriff's Department. Wittke reported that on May 15th he observed the residence to which the envelope was addressed and noted that its mailbox was located by the road. He concluded by stating he knew that the envelope in question was to be delivered to the residence on May 16th.

Based on these two affidavits, a search warrant was issued on May 15th by a Racine County Court Commissioner, requiring return of the warrant within 48 hours thereafter and authorizing a search of the premises at 11990 Long Lake Drive on the basis of the foregoing information. The Commissioner stated in the warrant that he had been informed by Wingert and Wittke that in the cottage in question "there will be located and concealed certain things, to wit: an envelope addressed to Patsy Klein, care of Danial Schwartzman, 11990 Long Lake Drive, Wind Lake, Wisconsin 53185 U.S.A. containing 8.8 grams of suspected cocaine (possessed for the purpose of evading or violating the laws of the state of Wisconsin and contrary to section 161.-41(2)(R)[(2r)] of the Wisconsin statutes) * * *."

Since Wittke's affidavit had stated on his own knowledge that the envelope was to be delivered to "11990 Long Lake Drive" on May 16th, it was permissible for the Commissioner's warrant to state his understanding that it would thereafter be "located and concealed" in the cottage. Therefore, we cannot subscribe to defendant's argument that the Commis-

sioner would have to assume the envelope would be deposited in the roadside mailbox rather than delivered to the door of the residence. From the Wittke affidavit, the Commissioner was justified in concluding that the Government contemplated a controlled, personal delivery to the residence. Even if he thought that the delivery was to be to the mailbox, he could properly find probable cause to believe that the residents would pick up their mail and carry it into the cottage.

We hold that the two affidavits contained probable cause for the Commissioner to authorize the search of the residence within 48 hours from the issuance of the search warrant. United States ex rel. Beal v. Skaff, 418 F.2d 430 (7th Cir. 1969); United States v. Feldman, 366 F.Supp. 356 (D.Haw.1973) (collecting cases).

During their search of the Wind Lake residence, Agent Wingert and Detective Donald Parker discovered three opened letters (Exhibits 3, 4 and 5) in a bedroom of the residence. Two of the letters were postmarked Medellin, Colombia, the same postmark as on Exhibit 2, the envelope opened in New York; the third bore postage from Curacao. The handwriting on all three was also similar to the New York one.

Immediately thereafter, they recovered Exhibit 2, the subject of the indictment, in the top drawer of a dresser in the same bedroom. Exhibit 6, a similar envelope postmarked Medellin, Colombia, addressed to Patsy Klein, c/o Danial Schwartzman at the Wind Lake residence, was discovered with Exhibit 2. When opened, it was found to contain 5.83 grams of cocaine with another greeting card.

■■ Defendant objected to the seizure of Exhibits 3, 4, 5 and 6, and their subsequent admission into evidence on the ground that their seizure was beyond the scope of the search warrant. However, Exhibits 3, 4 and 5 were discovered prior to finding Exhibit 2, the letter specifically described in the search warrant. Exhibit 6 was found alongside Exhibit 2 in the same room as Exhibits

3, 4 and 5. Once the item particularly described in the search warrant is found, the search must end, but other evidence or contraband found in the course of a proper search for the item particularly described may be seized. Here all four contested exhibits appeared on their face to have a nexus with the crime under investigation. Therefore, they were properly seized and, when they proved to be incriminating, admitted into evidence. Coolidge v. New Hampshire, 403 U.S. 443, 465, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); United States v. Kane, 450 F.2d 77, 85 (5th Cir. 1971).

Defendant's final point is that he was not sufficiently identified to sustain the conviction. The district judge concluded from the evidence that "there is a very definitive web that envelopes Mr. Odland." He explained his conclusion that Odland was sufficiently identified as follows:

"I think the coincidence of the name on Exhibit 4, being addressed to 'Danial Schwartzman' on the envelope and being addressed to 'David' in the content, is part of a, as Mr. Bukey [the prosecutor] very cogently argued —part of a web which suggests that the Dabong identities and the Danial Schwartzman identities are but pseudonyms or 'phony names,' as they are called in the correspondence for defendant.

"The expression in Exhibit 4, saying 'Your letter was a true Dabong Letter,' tends to support the belief that this was a calculated technique to avoid using correct names and to use pseudonyms; nevertheless, the Court has given great attention to the fact of the question as to whether Danial Schwartzman and Dabong are in fact Mr. Odland. The two principal pieces of evidence that suggest that he is, are the fact that he did receipt for the letter addressed to Patsy Klein, and he did so by signing 'Patsy Klein by Schwartzman.'

" \* \* \* But when we add to that the 'David' on the Exhibit 4 and add to that the coincidence of David Odland being the man who received the letter and who bears the name David, we get what I consider to be a irresistibly persuasive web which has so enveloped David Odland as to justify, in my judgment, a finding of proof by the Government beyond a reasonable doubt.

"I have no reasonable doubt that the defendant, David John Odland, is indeed the addressee of these five communications, 2 through 5—2 through 6, excuse me. Accordingly, the Court finds the defendant guilty and enters a judgment of conviction."

Our review of the evidence satisfies us that the trier of fact could properly find the defendant was the same person as Danial Schwartzman and "Dabong." Since three of the letters (Exhibits 3, 4 and 5) set out the scheme for defendant's importation of the cocaine in the envelopes enclosing the two greeting cards (Exhibits 2 and 6), sufficient evidence was presented to support the conviction.

Affirmed.