UNITED STATES of America

v.

Jeremy Albert CARPENTER and
John Edward Emery.

Crim. No. 75–72–F.

United States District Court,
D. Massachusetts.

Aug. 1, 1975.

James O'Neil, Asst. U. S. Atty., Boston, Mass., for plaintiff.

Jay M. Forgotson, Springfield, Mass., for defendant Carpenter.

Arthur Serota, Springfield, Mass., for defendant Emery.

MEMORANDUM AND ORDER

FREEDMAN, District Judge.

This matter is before the Court on defendants' motion to suppress. A hearing was conducted in Springfield, Massachusetts, on June 5, 1975, at which the parties offered evidence. After careful consideration of the evidence, stipulations, memoranda of counsel, and the pertinent authorities, the Court hereinafter enters its findings and conclusions.

On December 13, 1974, United States Customs Agents in Miami, Florida, opened two packages addressed to Jeremy Carpenter, P.O. Box 45, North Hatfield, Massachusetts, bearing the return address: Claudia Rush, Aveneo Del Rio, 5A95, Cali, Columbia. Each package contained a sound speaker and a quantity of cocaine.[1] This search was without a warrant and was not consented to by the addressee. The packages were later resealed and forwarded to United States Postal Service authorities in Boston who, with special agents of the Drug Enforcement Administration ("DEA"), again opened the packages on January 2, 1975. A field test was conducted and it affirmed that the substance was cocaine. Some of the drug was removed, sugar was mixed with the remaining cocaine, and the packages were resealed. The cocaine which had been removed was seized as evidence.

A briefing was conducted on January 5, 1975, for the Drug Enforcement Administration Agents who would be taking part in the investigation of the seized cocaine. Special Agents John Albano, Dale Seymour and John Tuttle, among others, were in attendance. Albano brought the other agents up to date on the investigation. A controlled delivery of the contraband was scheduled for the next day, January 6. Special Agent Tuttle was selected to be the affiant for the search warrant which was expected to be required since he was to be in Boston on another matter that day.

On January 6, 1975, Special Agents Albano and Seymour and Postal Inspector Dahlgren arrived at the Post Office in North Hatfield. The officers remained at the Post Office all day. At some point they inserted within each of the packages an electronic device known as a "beeper". This device was designed to emit a signal which could be monitored by a radio receiver. The signal would be altered when the "beeper" was disturbed. In this case the change would inform one monitoring the signal that one of the packages had been opened. The device is a metal-encased object about the size of a cigarette package. It is not capable of recording or transmitting anything of a verbal nature; its sole function is to emit a radio signal. No warrant was sought for the insertion of the "beeper", although the agents had decided to use it on January 2, 1975.

The DEA Agents and Inspector Dahlgren maintained surveillance of the Post Office throughout the day. At approximately 4:30 p. m., defendant Carpenter arrived to pick up his mail and was given the two packages in question.[2]

The agents then followed Carpenter to his home located above Buckwheat's Pizza in North Hatfield, maintained surveillance, and monitored the "beeper" over a radio receiver.

Special Agent Albano telephoned Agent Tuttle who was in Boston preparing an affidavit for the search warrant.[3]

1. The parties stipulated to the fact of the opening in Miami. No government witnesses involved in that search testified. The evidence concerning the identification of the contents as cocaine was offered by Special Agent Albano.

2. As will more fully appear later in this memorandum, the affidavit for the search warrant speaks of a notification of delivery slip being presented to the Postmaster. Carpenter never received nor presented such a slip. As he approached the counter, the Postmaster simply placed the packages on the counter and the defendant removed them.

3. The affidavit for the search warrant is attached as "Appendix A".

Tuttle completed the affidavit and thereupon went before Magistrate Davis who issued the warrant. Tuttle then proceeded to North Hatfield to join the other agents, arriving at approximately 7:00 p. m.

The agents maintained continuous surveillance of the Carpenter apartment. At some point during this period, defendant Emery and another individual entered the apartment. Later that evening, about 9:00 p. m., the agents detected a change in the signal from the "beeper", alerting them to the fact that one of the packages had been opened. They then proceeded to the Carpenter apartment and executed the search warrant. As several of the agents entered the building, those who had remained outside spotted the packages being thrown out of a window. It developed that Emery had dropped the packages out of the window; they were recovered by one of the agents and seized under the warrant.

Defendants assert three grounds for their motions to suppress: that the initial customs search in Miami on December 13, 1974 was invalid; that the affidavit in support of the January 6 search warrant was insufficient to provide the magistrate with probable cause; and that the warrantless insertion of the "beeper" was violative of the Fourth Amendment.

*Customs Search*

■ It is stipulated that this search was warrantless and, thus, the burden is upon the government to demonstrate that it was valid. No evidence was taken concerning this search.[4] The only factual material before the Court is that the search was conducted by customs agents and that the defendants did not consent thereto.

■ The government relies upon *United States v. Odland*, 502 F.2d 148 (7th Cir.), *cert. denied*, 419 U.S. 1088,

95 S.Ct. 679, 42 L.Ed.2d 680 (1974), which holds that " . . . the Government is free to spot-check incoming international mail at the port of entry, or to inspect all such mail, or to inspect any such mail which attracts the inspector's attention." *Id.* at 151. *Cf., United States v. Stornini*, 443 F.2d 833 (1st Cir. 1971). Defendants counter that *Odland* is not the law in this circuit and that customs officers required "reasonable grounds to suspect that contraband" was in the packages.

The cases cited by defendants are not persuasive. It is the position of this Court that the *Odland* formulation is correct and is controlling in this case. Accordingly, I find the initial search by United States Customs authorities to have been valid.

*Sufficiency of the Affidavit*

■ The affidavit for the search warrant is set forth as "Appendix A". Defendants correctly point out that the Court can only look to the information which was before the magistrate in determining whether there was probable cause to issue the warrant. *Aguilar v. Texas*, 378 U.S. 108, 109, n. 1, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The affidavit constitutes all the information which the magistrate had for his consideration.

■■ The thrust of defendants' contentions with respect to the affidavit is that the affiant's sources of information are not identified. There is no question but that substantially all of the information contained in the affidavit was of a hearsay nature. However, it is well settled that hearsay may be the basis for probable cause so long as there is a substantial basis for crediting the information. *Jones v. United States*, 362 U.S. 257, 272, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). In this case all of the paragraphs of the affidavit, with the excep-

---

4. There was hearsay testimony of Special Agent Albano that cocaine was found.

tion of paragraphs 5 and 8, refer to law enforcement agents of one branch or another of the United States Government. While each piece of information contributed by these officers does not contain the underlying basis for the factual representation, it is clear from the totality of Agent Tuttle's affidavit that these enforcement officers were engaged in a cooperative investigation. "Observations of fellow officers of the Government engaged in a cooperative investigation are plainly a reliable basis for a warrant applied for by one of their number." *Id.* at 111, 85 S.Ct. at 747 (footnote omitted). The sources of the observations of Special Agent Albano in paragraphs 6 and 7 are certainly adequately identified by the words "maintaining surveillance" used in both paragraphs.

Defendants argue further that this case is "on all fours" with *United States v. Curwood*, 338 F.Supp. 1104 (D.Mass. 1972) wherein the affidavit was found to be insufficient to establish probable cause. I reject the analogy. In *Curwood* the failure to identify the source of information left a question of whether that information was reliable or not. In the case at bar the information plainly comes from government agents engaged in an investigation. While it is true that the affiant might have supplemented his affidavit by adding amplifying information, the Court concludes that the facts set forth were sufficient to provide the requisite probable cause. In this regard I note the oft-cited passage from *United States v. Ventresca, supra*, at 108, 85 S.Ct. at 746:

> These [Supreme Court] decisions reflect the recognition that the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion.

Defendants have also pointed to an error of fact in that paragraphs 5 and 6 of the affidavit referred to a "[n]otification of delivery" slip; it is undisputed that such a slip was not used since the North Hatfield Postmaster does not employ such a procedure. *See* n. 2, *supra*. Such factual inaccuracies which are neither material nor intentional are insufficient to vitiate an otherwise valid warrant. *Cf., Rugendorf v. United States*, 376 U.S. 528, 532, 84 S. Ct. 825, 11 L.Ed.2d 887 (1964).

*Insertion of the "Beeper"*

The warrantless insertion of a "beeper" in each of the packages raises a question of whether such a device comes within the protection of the Fourth Amendment; i. e., whether the placing of the "beeper" constituted a "search".

Defendants contend that this device continuously monitored the events taking place within the apartment once Carpenter had returned with the packages. Such monitoring, however, was of a limited nature. No conversations were overheard or recorded as a result of the presence of the "beeper". Its only function in this case was to signal the agents when the packages were opened. They had a warrant to seize the boxes; it was not a matter of seizing evidence to which they would not have otherwise been entitled. Without doubt there was an "intrusion", but does such an intrusion rise to the level of a search requiring a warrant under the Fourth Amendment? I think not.

Defendants seek to bring this government activity within the purview of the warrant requirement by denominating the "beeper" an electronic monitoring device. Simply invoking the term "electronic" would not seem adequate to bring into play all the constitutional protections which defendants assert. The procedure used here is far less an intrusion than wire tapping or bugging. Those law enforcement techniques require all the protection afforded by the

Fourth Amendment. As Mr. Justice Douglas stated in his concurring opinion in *Berger v. New York*, 388 U.S. 41, 65, 87 S.Ct. 1873, 1886, 18 L.Ed.2d 1040 (1967):

> The traditional wiretap or electronic eavesdropping device constitutes a dragnet, sweeping in all conversations within its scope—without regard to the participants or the nature of the conversations. It intrudes upon the privacy of those not even suspected of crime and intercepts the most intimate of conversations.

The Supreme Court grappled with the issues of wire tapping and bugging for a long period before holding that conversations were to be covered under the Fourth Amendment. *See: Olmstead v. United States*, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928); *Goldman v. United States*, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322 (1942); *Silverman v.*

*United States*, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961); *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Berger v. New York, supra.* To carry the warrant protection to the placing of a "beeper" inside a package containing contraband which had been validly searched by customs officials is an extension of the Fourth Amendment which no court has yet made. On the facts of this case the "beeper" is not such an intrusion as to merit the procedural safeguards sought by defendants.

Accordingly, the motions to suppress are denied.

Defendants have also filed motions to dismiss based upon "illegal acts" of the government in its prosecution of the case. The Court has reviewed the evidence in light of these allegations, and finds them to be without merit. The motions to dismiss are denied.

## APPENDIX A

Affidavit for
Search Warrant

### UNITED STATES DISTRICT COURT
### FOR THE
### DISTRICT OF MASSACHUSETTS

Magistrate's Docket No. 15–1

Case No. 75–4

UNITED STATES OF AMERICA

vs.

Those certain premises known as the apartment of Jeremiah Carpenter, located above Buckwheat's Pizza at North Hatfield Road and West Street, North Hatfield, Massachusetts

AFFIDAVIT FOR
SEARCH WARRANT

BEFORE
*Name of Magistrate*

BOSTON, MASSACHUSETTS
*Address of Magistrate*

The undersigned being duly sworn deposes and says:

That he (has reason to believe) that (on the person of)

(is positive)[1]

(on the premises known as)

[1] The Federal Rules of Criminal Procedure provides: "The warrant shall direct that it be served in the daytime, but if the affidavits are positive that the property is on the person or in the place to be searched, the warrant may direct that it be served at any time." (Rule HC)

those certain premises known as the apartment of Jeremiah Carpenter, located above Buckwheat's Pizza at North Hatfield Road and West Street, North Hatfield, Massachusetts

in the District of Massachusetts there is now being concealed certain property, namely

here describe property

cocaine, in violation of Title 21, United States Code, § 952(a)

[SEE ATTACHED AFFIDAVIT]

~~which are~~

here give alleged grounds for search and seizure

And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows:

[SEE ATTACHED AFFIDAVIT]

John A. Tuttle
_____,
Signature of Affiant.

John Tuttle, Special Agent
Drug Enforcement Administration
_____,
Official Title, if any.

Sworn to before me, and subscribed in my presence, Jan. 6, 1975

Willie J. Davis
_____,
United States Magistrate.

---

### AFFIDAVIT

Suffolk, ss.

Boston, Massachusetts
January 6, 1975

I, John Tuttle, Special Agent, Drug Enforcement Administration, Hartford, Connecticut, do hereby depose and say as follows:

1. I am a Special Agent, Drug Enforcement Administration, Hartford, Connecticut.

2. On December 13, 1974, Special Agents of the Bureau of Customs, Miami, Florida intercepted two mail parcels measuring 7½″ X 5″ X 5¾″ addressed to Jeremy Carpenter, Post Office Box 45, North Hatfield, Massachusetts bearing the return address, Claudia Rush, Aveneo Del Rio, 5A95, Cali, Colombia. Each parcel contained one sound speaker within which was secreted one pound of cocaine, the two parcels containing a total of two pounds of cocaine.

3. The Bureau of Customs, Miami, Florida, forwarded these two parcels by mail pouch to the Postal Inspector, Boston, Massachusetts; they were received by Postal Inspector Dahlgren on December 20, 1974.

4. On December 26, 1974, Postal Inspector Dahlgren determined that the holder of Post Office Box 45, North

Hatfield, Massachusetts, Jeremiah Carpenter, resides in an apartment above Buckwheat's Pizza located at North Hatfield Road and West Street, North Hatfield, Massachusetts.

5. On January 6, 1975, at approximately 10 A.M., the two parcels were placed in the North Hatfield Post Office for delivery. Notification of delivery was placed in Post Office Box 45.

6. On January 6, 1975, DEA Special Agent John Albano, maintaining surveillance of the North Hatfield Post Office *advised* me that at approximately 4:00 P.M. Jeremiah Carpenter presented the notification of delivery slip to the window clerk of the North Hatfield Postal Station and received the previously identified $7\frac{1}{2}'' \times 5'' \times 5\frac{3}{4}''$ parcels addressed to Jeremiah Carpenter, Post Office Box 45, North Hatfield, Massachusetts bearing the return address, Claudia Rush, Aveneo Del Rio, 5A95, Cali, Colombia.

7. At approximately 4:30 P.M. DEA Special Agent John Albano, maintaining surveillance of the residence of Jeremiah Carpenter, located above Buckwheat's Pizza, North Hatfield Road and West Street, North Hatfield, Massachusetts, advised me that Jeremiah Carpenter entered that building in possession of two parcels measuring approximately $7\frac{1}{2}'' \times 5'' \times 5\frac{3}{4}''$.

8. For the foregoing reasons, I have probable cause to believe that there is now concealed in that building cocaine which has been imported from Colombia, in violation of Title 21, United States Code, Section 952(a).

John A. Tuttle
JOHN TUTTLE, Special Agent Drug Enforcement Administration Hartford, Connecticut

Sworn and subscribed to before me this 6th day of January, 1975.

Willie J. Davis
UNITED STATES MAGISTRATE