**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Charles H. LEIDNER, Defendant–
Appellee.**

No. 96–1570.

United States Court of Appeals,
Seventh Circuit.

Argued Aug. 6, 1996.

Decided Nov. 7, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied Dec. 9, 1996.

idner") to quash an anticipatory search warrant and suppress evidence seized from Leidner's residence in violation of the Fourth Amendment. Based on the totality of the circumstances, we find that the search warrant was a valid anticipatory search warrant and was supported by probable cause, and therefore, we reverse the decision below.

## I. Background

· On October 15, 1995, Steven Sapp ("Sapp") was stopped in Missouri by a state trooper for a traffic violation. During the stop, the patrolman discovered that Sapp was transporting 200 pounds of marijuana in the trunk of the car he was driving. Upon being arrested, Sapp revealed that he rented the car for purposes of transporting marijuana from Texas to Leidner's residence in rural Fayette County, Illinois. He alleged that Leidner agreed to pay him to make the delivery. He further admitted to successfully making and being paid by Leidner for such deliveries on previous occasions. After incriminating himself, Sapp agreed to assist the authorities by showing them where he was supposed to deliver the drugs and by wearing a recording device during the controlled delivery to Leidner's residence in Fayette County. After verifying that the car was rented, the Missouri police contacted Inspector Kelvin Worker ("Worker") of the Southeastern Illinois Drug Task Force. Worker acknowledged that Sapp was a local Fayette County resident known to Worker. Worker then spoke with Sapp on the telephone to confirm Sapp's arrest and that Sapp had agreed to cooperate by participating in a controlled delivery of the marijuana to Leidner's home.

Subsequently, Worker signed, verified, and submitted a "Complaint for Search Warrant" to a Fayette County Circuit Court Judge, James R. Harvey ("Judge Harvey"). This sworn complaint or warrant affidavit averred that Worker had probable cause to believe that marijuana *would be* located at Leidner's residence based on the information obtained from Sapp (identified as "John Doe" in the complaint) during the traffic stop by the Missouri police. More specifically, the complaint avouched that "John Doe was in the

Thomas Edward Leggans (argued), Office of the United States Attorney, Criminal Division, Fairview Heights, IL, for Plaintiff–Appellant.

J. William Lucco (Argued), Lucco, Brown & Mudge, Edwardsville, IL, Jane M. Lawinger, Lefevre, Zeman, Oldfield & Schwarm, Vandalia, IL, for Defendant–Appellee.

Before BAUER, MANION, and DIANE P. WOOD, Circuit Judges.

BAUER, Circuit Judge.

The government appeals the district court's decision granting a motion ·filed on behalf of defendant Charles H. Leidner ("Le-

process of delivering said cannabis to Charles Leidner at Leidner's residence;" that Worker considered the informant's statements to be reliable since they were offered against the informant's penal interest; and that Doe "agreed to cooperate with law enforcement personnel ... and is expected to deliver said cannabis to Charles Leidner's residence located in rural Fayette County, Illinois today being October 15, 1995." (Gov.'s Br.App. A–1). After reviewing this sworn complaint, Judge Harvey issued a search warrant authorizing a search of Leidner's residence. (Gov.'s Br.App. A–3). According to the government, the judge orally [1] (though he did not so specify in the warrant) instructed the officers to execute the warrant only after Sapp made the delivery.

Although Leidner was not home when Sapp delivered the marijuana to Leidner's residence later that same evening, another person at the residence, James Thompson, helped Sapp unload the marijuana and then telephoned Leidner. Sapp then left and the officers waited until Leidner returned, approximately forty-five minutes later, to execute the search warrant. They subsequently arrested Leidner after finding at his residence the earlier-delivered marijuana along with lighted marijuana cigarettes, a firearm, ammunition, and Thompson.

On November 20, 1995, a federal grand jury in the Southern District of Illinois indicted Leidner for conspiracy to · distribute marijuana and possession with intent to distribute marijuana. On January 12, 1996, the defendant, through counsel, filed a Motion to Suppress, alleging (1) that the search warrant was an unconstitutional anticipatory search warrant,[2] and (2) that the search warrant insufficiently identified the place to be searched. The court rejected the second ground but agreed that the anticipatory search warrant was constitutionally defective. The court found the warrant's "fatal defect" was its lack of any specified requirement that the drugs be delivered prior to execution of the warrant. (R. at 57). The court also rejected the government's argument that any defect in the warrant was cured by the officers' good-faith and justifiable reliance on the warrant. *Id.* On appeal, the government challenges both of these latter rulings.

## II. Probable Cause for Anticipatory Search Warrant

In *Ornelas v. United States,* —— U.S. ——, ——, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996), the Court held, as a general matter, that Fourth Amendment probable cause determinations are to be reviewed *de novo.* "Having said this, [the Court] hasten[ed] to point out that a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Id.* This circuit has recently acknowledged the application of *Ornelas* to Fourth Amendment warrant cases. *United States v. Navarro,* 90 F.3d 1245, 1251 (7th Cir.1996).

Anticipatory search warrants are peculiar to property in transit. Such warrants are issued in advance of the receipt of particular "property" (usually contraband) at the premises designated in the warrant based on probable cause that the property will be located there at the time of the search. *See United States v. Gendron,* 18 F.3d 955, 964 (1st Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 654, 130 L.Ed.2d 558 (1994). As one commentator put it:

> [A]s a general proposition the facts put forward to justify issuance of an anticipatory warrant are more likely to establish

---

1. Worker testified at the suppression hearing that Judge Harvey told him that since the warrant was an *anticipatory* search warrant Worker had to wait until Sapp made the delivery to Leidner's residence before he could execute it. (Tr. at 65, 66).

2. In his motion to suppress, Leidner contended that the search warrant was unconstitutional (1) because the warrant failed to explicitly condition its execution on the delivery, (2) because it failed to ensure that the marijuana was on a "sure course" to Leidner's residence, (3) because it failed to describe the role to be played by the police in the delivery, (4) because it failed to include time restraints, and (5) because it failed to reflect that the issuing judge exercised a supervisory function as a neutral and detached magistrate. (R. at 44). Hence, other than challenging ·the lack of these protective safeguards, Leidner did not directly challenge the informant's reliability.

that probable cause will exist at the time of the search than the typical warrant based solely upon the known prior location of the items to be searched at the place to be searched.

2 Wayne R. LaFave, Search and Seizure § 3.7(c), at 97 (2d ed.1987). This circuit has long recognized the constitutionality of such warrants. *See United States ex rel. Beal v. Skaff,* 418 F.2d 430, 434 (7th Cir.1969) [hereinafter *Beal*]. Illinois courts have likewise noted that "the objective of the fourth amendment is better served by allowing the police to obtain a warrant in advance of delivery, rather than have the police go to the scene and proceed under the exigent circumstances exception to the warrant requirement." *People v. Ross,* 267 Ill.App.3d 711, 205 Ill.Dec. 49, 54, 642 N.E.2d 914, 919 (1994) (citations omitted).

While acknowledging that anticipatory search warrants are not *per se* unconstitutional, Leidner contends that the warrant here was unconstitutional because (1) it lacked an explicit statement that delivery of the marijuana was a condition precedent to its execution, and (2) because the complaint (or warrant affidavit) failed to establish an independent connection or "nexus" between Leidner's residence and the contraband found within,[3] and (3) the complaint failed to demonstrate that the marijuana was on a "sure course" to Leidner's residence. (Def.'s Br. at 9). The government resolutely seeks reversal of the district court's suppression ruling, arguing that " '[c]ontraband does not have to be presently located at the place described in the warrant if there is probable cause to believe that it will be there when the search warrant is executed.' " (Gov.'s Br. at 7) (citing *United States v. Lowe,* 575 F.2d 1193, 1194 (6th Cir.1978)). The government also contends that the warrant's lack of an explicit conditioning statement is not a constitutional defect and, in any event, is of no significant consequence since the judge verbally advised the officers at the hearing to wait until delivery before executing the search and since the officers, in fact, understood and abided by these admonitions. *Id.*

First, we consider whether the district court erred in holding that the warrant's "fatal defect" was its failure to explicitly limit its execution until after the delivery occurred. Although approving the use of anticipatory warrants as early as 1969 in *Beal,* 418 F.2d at 434, the Seventh Circuit has sparingly addressed the question of appropriate safeguards. In *Beal,* the magistrate issued a search warrant pursuant to an affidavit from the district attorney stating that a parcel believed to contain marijuana was in the post office and would be delivered to the defendant's residence. *Id.* at 433. The defendant challenged the warrant noting that there were no facts before the magistrate to support the belief that an offense "has been or is being committed." *Id.* at 433. The court upheld the anticipatory warrant finding little doubt that the warrant would be executed after delivery of the parcel. *See id.* Notably, the court did not address the issue of whether the Constitution requires the search warrant or the warrant affidavit to explicitly condition the search upon delivery of the contraband to the stated residence. *See id.*

In a subsequent case, this court focused on the language in the affidavits submitted with the anticipatory warrant request. *See United States v. Odland,* 502 F.2d 148 (7th Cir.), *cert. denied,* 419 U.S. 1088, 95 S.Ct. 679, 42 L.Ed.2d 680 (1974). *Odland* upheld the warrant noting that the affidavits demonstrated that a government-controlled delivery of the contraband to the residence would take place. *Id.* at 152. Again, the court in *Odland* did not specifically require, as a procedural safeguard, the warrant (or the warrant affidavit) explicitly to condition the search on the delivery.

Challenging the anticipatory warrant issued for his residence, Leidner points to a seminal case in the Second Circuit upholding the constitutionality of a search executed pursuant to an anticipatory warrant that expressly conditioned its execution upon delivery of the contraband to the location to be searched. *United States v. Garcia,* 882 F.2d

---

3. Although this reason was not specifically raised before the district court, we will consider it since this challenge is arguably implicit within Leidner's argument that the warrant failed to show that the contraband was on a "sure course" to Leidner's house.

699, 701, 703–04 (2d Cir.), *cert. denied sub nom. Grant v. United States,* 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989). To prevent abuses of the Fourth Amendment caused by premature executions of anticipatory search warrants, *Garcia* opined that anticipatory warrants should indicate where the alleged transfer will occur, how the affiant knew of the transfer, the affiant's opinion of the reliability of the information, and the role of the law enforcement officers in the expected transfer. *Id.* at 703. Moreover, the court in *Garcia* stated that these "warrant conditions governing the execution [should be] explicit, clear, and narrowly drawn so as to avoid misunderstanding or manipulation by government agents." *Id.* at 703–04; *United States v. Ricciardelli,* 998 F.2d 8, 11–12 (1st Cir.1993).

Based on our review of the warrant at issue, we find that the warrant would survive scrutiny under *Garcia.* Indeed, the warrant stated that the alleged transfer of contraband would occur at Leidner's residence, that the affiant learned of this transfer from an informant, that the affiant considered the informant reliable due to his against-interest statements, and that the transfer would occur through a controlled delivery in cooperation with the police. Still, Leidner argues that under *Garcia* anticipatory search warrants *must* also contain a sufficiently clear statement that the officers must delay executing the search until after the contraband is ultimately delivered to the place named in the warrant.

As stated earlier, we find no cases from this circuit requiring (as a matter of constitutional law) anticipatory warrants to explicitly state that the expected delivery must occur prior to execution of the warrant.[4] Hence, we do not believe that an anticipatory search warrant's constitutionality is doomed by the absence of such language even though other circuit courts in reviewing similar challenges to anticipatory warrants have significantly focused on the presence or absence of such conditioning language.[5] While *Garcia* and its progeny may support a preference that anticipatory search warrants contain such language, we are not compelled by the Constitution to require it since all that is constitutionally required is that the search warrant be supported by probable cause. *Illinois v. Gates,* 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983). In any event, Leidner's counsel at argument agreed that the constitutionality of the warrant in this case did not depend, in fact, on the presence of such conditioning language. Leidner's counsel argued that even if the conditional language was present the warrant was still unconstitutional because the complaint failed to establish an independent nexus between the marijuana and Leidner's residence and because the warrant affidavit did not establish that the contraband was on a "sure course" to Leidner's residence.

Several circuits agree that in order for an anticipatory warrant to satisfy the probable cause standard it must demonstrate that contraband is on a "sure course" to the destination to be searched. *See, e.g., Gendron,* 18 F.3d at 967 (noting as significant the lack of doubt that the planned delivery would occur); *Ricciardelli,* 998 F.2d at 12 (noting that the

---

**4.** We do not think an explicit conditioning statement is necessary where, as here, such a requirement is logically implicit.

**5.** *See United States v. Moetamedi,* 46 F.3d 225, 228 (2d Cir.1995) (stating that an anticipatory warrant is valid even if it fails to explicitly condition its execution on delivery of the contraband when "clear, explicit, and narrowly drawn" conditions are contained in the warrant affidavit and those conditions are actually satisfied before the warrant is executed); *United States v. Gendron,* 18 F.3d 955, 967 (1st Cir.) (upholding warrant where postal inspector's affidavit specified that probable cause to search would arise only "after the parcel has entered the premises"), *cert. denied,* — U.S. —, 115 S.Ct. 654, 130 L.Ed.2d 558 (1994); *United States v. Tagbering,* 985 F.2d

946, 950 (8th Cir.1993) (upholding search where affidavit (even if not incorporated into the warrant) represented that warrant would not be executed until the package at issue was delivered by mail and accepted at the subject residence); *United States v. Rey,* 923 F.2d 1217, 1221 (6th Cir.1991) (upholding search where affidavit submitted in request for anticipatory warrant stated that execution would occur "subsequent to the delivery of package"); *United States v. Dornhofer,* 859 F.2d 1195, 1197 (4th Cir.1988) (upholding search where magistrate explicitly conditioned the validity of the warrant on the contraband being placed in the mail addressed to the subject premises), *cert. denied,* 490 U.S. 1005, 109 S.Ct. 1639, 104 L.Ed.2d 155 (1989).

"sure course" requirement ensures that the contraband, though currently elsewhere, will be present for the search); *Dornhofer,* 859 F.2d at 1198 ("When [the postal inspector] placed the contraband in the mail, the requirement . . . that the contraband was on a sure course to its destination was met."); *see also United States v. Upton,* 763 F.Supp. 232, 238 (S.D.Ohio 1991) (conceding that anticipatory warrants are commonly approved where the warrant is "expressly contingent upon delivery" or "where the contraband has been placed in the United States mail," but opining that "these methods do not exhaust the means by which an anticipatory warrant may be properly issued. The determining factor . . . is whether the contraband 'is on a sure course to its destination.' "). The lack of such a nexus was instrumental in the First Circuit's decision (upon which the district court relied)[6] to quash an anticipatory warrant. *See Ricciardelli,* 998 F.2d at 11 (stating that the warrant was "fatally defective because it failed to forge a sufficient link between the [contraband] and the proposed search of appellant's abode"). In *Ricciardelli,* the contraband-containing package was mailed to the defendant's residence along with a return receipt requiring his signature. *Id.* at 13–14. Since he was not home to sign for it, he later retrieved it from the post office and brought it home. *Id.* at 14. Striking the warrant, the First Circuit noted that under the warrant terms, once the defendant retrieved the package, postal inspectors could have searched his home whether or not he brought the contraband there. *Id.* Hence, the court found that the government failed to demonstrate a sufficient nexus or a "sure course" between the parcel and the defendant's home. Concurring that inadequately delineated warrants are subject to misunderstanding or manipulation by government agents, the district court applied *Ricciardelli*'s principles to the case at hand and quashed the warrant.

The government contends that the district court's reliance on *Ricciardelli* is misplaced,

arguing that *Ricciardelli* was wrongly decided and was effectively (though not explicitly) overruled by *Gendron,* 18 F.3d at 966–67. (Gov.'s Br. at 9). The government further contends that the "sure course" or nexus requirement was satisfied by Judge Harvey's admonitions to delay the search until after the scheduled delivery, as well as by the fact that the officers did, in fact, understand and heed this advice. Leidner disagrees. Furthermore, he attempts to distinguish the context of this case (where Sapp was scheduled to deliver the marijuana to Leidner's residence on the day the warrant issued) from that in cases where the contraband-containing parcel was mailed to the subject premises. (Def.'s Br. at 16) (noting that Sapp "is not the U.S. Postal Service"). Finally, Leidner argues that a link or connection "*independent of the prospective delivery*" between the site and the contraband is necessary "to check police from too readily executing warrants based on unsubstantiated claims by persons caught carrying contraband, like Sapp." *Id.*

Turning to these arguments, we first note that the First Circuit did recently explain its decision in *Ricciardelli. See Gendron,* 18 F.3d at 966–67. The court in *Gendron* noted that the *Ricciardelli* court was highly influenced by certain background facts that made it ambiguous as to whether the receipt of the parcel would take place. *Id.* at 967 (finding it significant that the postal inspectors in *Ricciardelli* "undeniedly had envisioned" the possibility that the package would not be delivered to the defendant's home at all). Hence, the court confined *Ricciardelli* to the facts of its case and upheld a warrant similar to the one struck down earlier in *Ricciardelli.* In this process, *Gendron* appears to discount any reliance on *Ricciardelli* except in similar cases where, for instance, there is recognized doubt that the contraband will ultimately be delivered to the defendant's residence identified in the search warrant.

It is thus necessary to consider whether, as the government argues, the present case

---

**6.** Although the district court cited *Ricciardelli* in support of its conclusion that the anticipatory warrant at issue fatally lacked a statement conditioning its execution upon delivery [to Leidner's residence] of the marijuana, the court also ac-

knowledged that "the basis for the [*Ricciardelli* ruling] was that the warrant did not establish a nexus between the criminal act, the evidence to be seized, and the place to be searched." (R. at 57).

is distinguishable from *Ricciardelli* since the officers were verbally instructed by the issuing judge on the correct manner to execute the warrant and since the officers, in fact, heeded this advice. Even if we accept that the officers at the hearing were so instructed (Inspector Worker testified under oath regarding these verbal admonitions), the government has not demonstrated that this advice was passed along to all the officers executing the warrant. Moreover, this circuit has warned against drawing conclusions based solely on what actually occurred since probable cause determinations must be based on the evidence before the magistrate or judge issuing the warrant. *See Beal*, 418 F.2d at 431.

■ Leidner argues that, as in *Ricciardelli*, it was doubtful that the contraband was on a "sure course" to Leidner's house since the expected delivery was to be made by Sapp, rather than by a government agent or by the United States Post Office. We acknowledge that government-controlled deliveries may be more likely to reach their destination than those deliveries expected within the normal course of a drug organization's operations. *See Rivera v. United States*, 928 F.2d 592, 603 (2d Cir.1991) (noting that "[w]hen the anticipatory warrant is not based on a delivery controlled by the government, there is a greater possibility that the expected drugs will not arrive."). But this line of reasoning actually hurts rather than supports Leidner since the scheduled delivery here was essentially a government-controlled delivery. The local judge, Judge Harvey, was advised that the informant (Sapp) would personally deliver the marijuana to Leidner's residence, under the direction and supervision of the government. Hence, the expected delivery by Sapp, supervised by the government, is significantly different from those deliveries "expected in the ordinary course of the drug organization's operations." *See id.*; *cf. People v. Martini*, 265 Ill.App.3d 698, 202 Ill. Dec. 751, 757, 638 N.E.2d 397, 403 (1994) (noting that in the "majority of cases in which anticipatory warrants have been used

... a drug shipment in the hands of a courier/informant served to establish that when that shipment was delivered to the dealer, probable cause to search would exist."). Thus, unlike in *Ricciardelli*, there was no indication of doubt impinging on the likelihood of the expected delivery and Judge Harvey could properly find that the "sure course" requirement was met. *See id.* at 603 (noting that a magistrate may conduct a lesser inquiry into the "sure course" factor when an anticipatory warrant request is based upon a government-controlled delivery).

■ Nevertheless, Leidner's counsel argued that suppression is warranted because Sapp could have named anyone he knew in an effort to transfer the blame from himself after being caught with the contraband in hope of getting a "better deal" from the authorities. In other words, Leidner takes issue with Sapp's reliability. The government contends that Leidner waived this argument since it was not presented below. We will consider it since, although the argument was not specifically stated this way below, the challenge is arguably implicit within those arguments that were raised.[7] Thus, we proceed to consider Leidner's argument that the warrant was constitutionally defective because it was based on an informant's unsubstantiated allegations.

Before applying for the warrant, the Missouri police corroborated that Sapp rented a car and that he was known to be a local resident of Fayette County. Judge Harvey was advised that the affiant, Officer Worker, personally knew Sapp and that he considered him reliable due to his statements made against his penal interest (concerning his prior deliveries). Worker also averred that Sapp agreed to make the delivery in cooperation with the law enforcement authorities. We have recently noted that "[c]redibility ... is a matter of the totality of the circumstances." *United States v. Buckley*, 4 F.3d 552, 556 (7th Cir.1993) (citing *Illinois v. Gates*, 462 U.S. 213, 234, 103 S.Ct. 2317,

---

7. Leidner's "sure course" argument arguably challenges whether the contraband was on a sure course to Leidner's house *before* Sapp was arrested. In other words, Leidner argues that the warrant must show a connection between Leidner and the contraband due to arrive at his house independent of Sapp's accusations.

2330, 76 L.Ed.2d 527 (1983), *cert. denied sub nom. Herman v. United States,* 510 U.S. 1124, 114 S.Ct. 1084, 127 L.Ed.2d 400 (1994)). Indeed, "even if we entertain some doubt as to an informant's motives, [her] explicit and detailed description of the alleged wrongdoing, along with a statement that the event was observed first hand, entitles [her] tip to greater weight than might otherwise be the case." *Gates,* 462 U.S. at 234, 103 S.Ct. at 2330. As in *Buckley,* Sapp's credibility increased when he admitted to making prior deliveries for Leidner. See *Buckley,* 4 F.3d at 556 ("For the search warrant to be supported by probable cause, [the informant] must have spoken against her penal interest at the time she admitted to [the arresting officer] that she purchased cocaine from the defendants."); *see also United States v. Harris,* 403 U.S. 573, 587, 91 S.Ct. 2075, 2083–84, 29 L.Ed.2d 723 (1971); *United States v. Barnes,* 909 F.2d 1059, 1069 (7th Cir.1990) (noting than an informant's admission against his penal interest supports the informant's credibility).

In a recent case factually similar to this one, the Eighth Circuit used a "totality of the circumstances" approach to determine whether the contraband was on a "sure course" to the defendant's farm, and, therefore, whether there was sufficient probable cause for issuance of an anticipatory search warrant for the farm. *See United States v. Bieri,* 21 F.3d 811, 815 (8th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 208, 130 L.Ed.2d 138 (1994). Like Sapp, the informant in *Bieri* was arrested with a large quantity of marijuana, told the police that he was to deliver the drugs to the defendant's farm, and agreed to participate in a controlled delivery operation. *Id.* The court concluded that "the facts set forth in the affidavit regarding [the informant's] delivery were sufficient to establish that contraband would probably be found on the farm." *Id.* Accordingly, the court upheld the warrant and rejected the defendant's arguments in support of suppression.[8]

Under the totality of the circumstances, we find that the anticipatory search warrant was supported by probable cause. Moreover, the lack of explicit conditioning language does not constitute a constitutional defect. Accordingly, we REVERSE the district court's decision granting Leidner's motion to suppress based on an invalid anticipatory search warrant. The case is REMANDED for further proceedings consistent with this opinion.

DIANE P. WOOD, Circuit Judge, concurring in the judgment.

In my view, the anticipatory search warrant in this case was constitutionally defective because it failed to ensure that the marijuana in Sapp's vehicle was on a "sure course" to Leidner's residence prior to the government's intervention. Nevertheless, because the police officers executing the warrant relied on it in good faith, the exception to the exclusionary rule announced in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), is applicable to this case. I therefore concur in the judgment of the Court.

As the majority notes, one of the grounds on which Leidner challenged the warrant was that it failed to ensure that the marijuana was on a "sure course" to Leidner's residence before the government took control of it. In order for an anticipatory warrant to satisfy the probable cause requirement, it must demonstrate that the contraband in question will be at the designated place at the time set for the search. See, *e.g., United States v. Ricciardelli,* 998 F.2d 8, 12 (1st Cir.1993); *United States v. Dornhofer,* 859 F.2d 1195, 1198 (4th Cir.1988), *cert. denied,* 490 U.S. 1005, 109 S.Ct. 1639, 104 L.Ed.2d 155 (1989). The purpose of this requirement goes to the heart of the warrant requirement itself. Suppose, for example, that the government wished to search the home of Jane Doe, in Chicago, Illinois. DEA agents arrange to have a parcel containing marijuana delivered to her home at 3:00 the next afternoon, and then they go to a magistrate seeking an anticipatory search warrant, stating that they believe marijuana will be found at the house after that time. Their expectation is quite likely to be borne out, because the

---

**8.** Although the warrant in *Bieri* did contain a statement expressly conditioning the search upon delivery, the court placed little emphasis on this fact.

government itself made sure that the parcel would be there, but if this were enough to support a warrant the warrant requirement itself would become meaningless.

The majority appears to recognize this problem when, at page 1429 *ante*, it acknowledges that "government-controlled deliveries may be more likely to reach their destination than those deliveries expected within the normal course of a drug organization's operations," and further when it admits that Sapp could have named anyone he knew when he was arrested. Once Sapp named Leidner, there was obviously no doubt that the marijuana would end up at Leidner's home; Sapp made the delivery under the government's control. But the warrant gave no reason to believe that the shipment was on a "sure course" to Leidner's home *before* Sapp made his statement to the agents. No address appeared on the packages; no evidence indicated that Leidner's address or telephone number was in Sapp's possession. Execution of the warrant was not contingent upon the establishment of any nexus between the marijuana Sapp was transporting and Leidner. This case is therefore distinguishable from *United States v. Bieri*, 21 F.3d 811 (8th Cir.), *cert. denied*, — U.S. —, 115 S.Ct. 208, 130 L.Ed.2d 138 (1994), on which the majority relies. In *Bieri*, the informant had made prior deliveries of marijuana to the residence of the Bieris, and Susan Bieri personally paid $300 for the marijuana *before* the anticipatory warrant was executed. Here, Leidner was not even at home when Sapp made the government-controlled delivery.

The problem of government manipulation is unique to anticipatory warrants, because in the normal situation a warrant will issue only if there is probable cause to believe that contraband is already at the place to be named in the warrant. When the contraband is admittedly *not* at the place named in the warrant, it should not be enough for the government itself (or its agent) to transport it to that place and then execute a search. This tactic would effectively transform the anticipatory warrant into an unconstitutional general warrant. See generally James A. Adams, *Anticipatory Search Warrants: Constitutionality, Requirements, and Scope*, 79

Ky. L.J. 681 (1991) (outlining the requirements that anticipatory search warrants should have in order to remain constitutional). Even though I am confident that the government would not normally target an anticipatory warrant toward a home they wished to search for other reasons, the purpose of the warrant requirement is to ensure that the rare cases of abuse do not occur. I would therefore require, as part of the probable cause showing for an anticipatory warrant, a showing of some pre-existing nexus between the contraband and the place to be searched that is not wholly within the government's control. See generally *Ricciardelli*, 998 F.2d at 12–14.

In this case, the police officers executing the warrant had no reason to know that this crucial link was missing. All they knew was that an informant found to be reliable "was in the process of delivering" the marijuana to Leidner, at his residence, and that the delivery was expected on October 15, 1995. Because the defect did not appear on the face of the warrant, the good-faith exception of *Leon* requires us to refrain from invoking the exclusionary rule. For this reason, I concur in the judgment of the Court.