UNITED STATES of America, Plaintiff,

v.

John UPTON, Kim Montgomery, Defendants.

No. CR–2–90–38(1, 2).

United States District Court, S.D. Ohio, E.D.

Jan. 11, 1991.

Gary Spartis, Groveport, Ohio, for U.S.

Marcia Zand, Paul Cassidy, Columbus, Ohio, for defendants.

## MEMORANDUM AND ORDER

HOLSCHUH, Chief Judge.

This matter is before the Court on the motions to suppress evidence and the supplemental motions to suppress evidence filed by defendants, John Upton and Kim Montgomery. The government filed memoranda contra both the original motions and supplemental motions, and an evidentiary hearing was held December 4, 1990. Afterwards, the parties submitted post-hearing briefs.

### I.

Defendants Upton and Montgomery are charged in a four-count indictment with conspiracy to possess with intent to distribute methamphetamine, possession with intent to distribute approximately sixty (60) grams of methamphetamine, possession with intent to distribute sixteen (16) grams of psilocybin, and the knowing and intentional use of premises under their ownership and control to store and distribute methamphetamine. The indictment followed the execution of a search warrant at 97 Rumsey Road, Columbus, Ohio 43207 on December 21, 1988 by detectives of the Franklin County Sheriff's Department. It is the fruits of this search which defendants are seeking to suppress.

Defendants' original motions to suppress consist of two branches. Branch one charges (1) that the magistrate issuing the search warrant, a judge of the Franklin County Municipal Court, abandoned his detached and neutral role; (2) that the warrant authorized sheriff's deputies to deliver a package containing methamphetamine in violation of Ohio's drug trafficking laws; (3) that the search warrant was a general warrant forbidden by the Fourth and Fourteenth Amendments to the United States Constitution; and (4) that the search warrant was not issued upon probable cause and that the affidavit is barren of any facts to support a finding of probable cause to

search for the items set forth in the "boilerplate" paragraph of the warrant. Branch two demands suppression of the contents of the package initially opened by United Parcel Service employees and later examined, seized and tested by Franklin County Sheriff's deputies without a warrant. Defendants' supplemental motions to suppress seek to exclude as evidence the contents of certain answering machine tapes seized during the course of the December 21, 1988 search and later replayed and transcribed by Franklin County Sheriff's deputies. Defendants contend that such conduct violated their rights protected by the Fourth and Fourteenth Amendments, 18 U.S.C. §§ 2510, 2511 and Ohio Rev.Code §§ 2933.51, et seq.

## II.

Mike Spiert, a detective with the Franklin County Sheriff's Department, identified government's exhibit 1 as a copy of the search warrant which he prepared upon the advice of an assistant county prosecutor. He stated that the following facts contained in the search warrant affidavit were true:

On Wednesday December 21, 1988 a driver from United Parcel Service 2450 Rathmell Road Columbus, Ohio attempted to make a delivery of a package to an address in zip code 43207. The package was a brown paper wrapped cube approximately 9″ on a side addressed with a felt tip pen. During shipment the address was partially obscured due to water contamination. Visible was the first name John, last name unreadable. Also visible was the number 97 and the first three characters of the street that being RUM. Also visible was the zip code 43207. With the address partially obscured the driver following standard United Parcel proceedures [sic] returned the package to the address verification clerk Scott Schradle. United Parcel Service encourages all shippers to include an additional address inside the package in case of damage to the outer wrapper of the parcel.

On opening the package to determine if there was an additional address inside, Schradle discovered a zip locked package containing a white powder. The zip locked package had been sealed in a heat sealed plastic outer bag and then both bags were sealed in a third heat sealed plastic bag. Taped to the outer bag was a note with the following: 2 OZ. 1200 × 2 = $2400.00 TOTAL DUE.

Mr. Schradle then contacted Tom Fisher, Security Officer for United Parcel who in turn contacted the Sheriff's Department. Included on the outside of the package was the return address of 717 West Union Hills, Phoenix, Az. Also on the package was a code indicating to United Parcel the agency or office that originally shipped the package for the customer. This code was for the satellite agency known as Personal Mail Box, 717 W. Union Hills, Phoenix, Az. An employee of United Parcel Service contacted Personal Mail Box in Phoenix to determine if they could provide an accurate address for delivery of the package. Personal Mail Box provided Mr. Fisher with the following address: Mr. John Upton, 97 Rumsey Road, Columbus Ohio 43207.

At approximately 1:45 PM Detective Spiert took custody of the package from Tom Fisher and transported the package to The Columbus Police Crime Lab, where at 2:20 PM the white powder was tested by Nick Zonakis and Timothy Rector the material tested positive for methamphetamine, a schedule II drug, weighing a total of 55 grams. Approximately 1 gram has been removed by Det. Spiert for preservation and evidence.

Mr. Fisher has provided Cpl. Mike Powell with a United Parcel Service truck and uniform during the afternoon hours of December 21, 1988 Det. Spiert, who has maintained the package in his custody since receiving it from Mr. Fisher, Cpl. Powell will attempt to deliver the package to 97 Rumsey Road. At that time this search warrant will be executed.

Detective Spiert further testified that when he first inspected the package, it had already been opened by UPS employees and remained open. Based on the packaging, the written notations, the strong odor

emanating from the package, and his experience as a narcotics detective, he believed it to be contraband. Without opening the package further, Spiert conducted a field test for cocaine which proved negative. He then contacted assistant county prosecutor Mike Burns who suggested removing a small amount of the powder for laboratory testing and arranging for a controlled delivery of the package.

Spiert stated that he followed Burns' advice, and that after taking a sample to the crime lab and awaiting test results, he took the package to his office and rewrapped it. He then prepared the search warrant and accompanying affidavit and presented them to Judge O'Grady of the Franklin County Municipal Court. According to Spiert, Judge O'Grady read the affidavit before authorizing the search and voiced no problem as to the delivery of a drug package by a sheriff's deputy.

The following language in the warrant was identical to that found in the affidavit, and was acknowledged by Detective Spiert to be the standard language used in drug search warrants:

> Pursuant to 2933.21 ORC and Criminal Rule 41, evidence of the commission of the criminal offenses of Aggravated Trafficking in Drugs, 2925.03 ORC and Drug Abuse, 2925.11 ORC. Specifically a brown UPS package approximately 9″ on a side containing methamphetamine, a schedule II drug. Or any other controlled substance or drug of abuse, as defined in 3719.41 ORC. Any records, ledgers, or documents indicating the trafficking in drugs. Any tools, instruments, equipment or paraphanalia [sic] used to manufacture, store, process or sell drugs of abuse. Any monies derived from the trafficking in drugs. Papers, documents or utility records indicating the ownership or occupancy of the premises known as 97 Rumsey Road, Columbus, Ohio. Further to photograph and fingerprint, at the scene, any adult subjects found inside the premises for the purposes of comparison to any latent fingerprints found at the scene on drug abuse evidence.

Spiert further testified that he was always taught that the language used in the warrant should match that in the affidavit.

Corporal Powell delivered the package to 97 Rumsey Road where it was signed for and received by defendant Upton. Franklin County Sheriff's deputies then executed the search warrant. Detective Spiert testified that a protective sweep of the premises was made and that defendants Upton and Montgomery, both present at the scene, were immediately detained. The package was laying unopened on a couch and, according to Spiert, was probably the first item seized. Spiert personally searched the bedroom and while there, he was informed by other officers that a telephone call had come in over the answering machine from a man who identified himself as "Sam." UPS employees had earlier traced the origin of the package to a Sam Jacobs, and had provided this information to sheriff's deputies prior to the search. Spiert then ordered the seizure of the answering machine and the tapes because they apparently contained evidence of drug trafficking and would also indicate occupancy of the Rumsey Road address. Spiert stated that answering machines and telephones are used as tools in the drug trade. Spiert further testified that officers entered the premises at approximately 5:48 p.m. and did not remain on the premises any longer than necessary to conduct the search.

Spiert was unsure when the tapes were played or whether he actually listened to them. He did not ask defendants' permission to play the tapes nor did he contact the assistant county prosecutor for legal advice prior to seizing them since he regarded their seizure as within the scope of the warrant. According to him, the tapes were later removed from the property room by Sergeant Hammond and were transcribed. One tape contained the owner's introduction. The second tape contained messages recorded from incoming calls. Both tapes were in the answering machine at the time they were seized. There were at least eleven calls indicated on the second tape prior to commencement of the search, the eleventh caller leaving a time of 4:00 p.m. Of

those eleven calls, some were from "Sam." The next caller, Greg, recorded no time. After Greg's call, messages were received during the time deputies were on the scene from Dennis, Dave, Sam and Lisa.

Sergeant John Hammond of the sheriff's department testified that he was also present during the search. He confirmed that it was he who heard the message from "Sam" and informed Detective Spiert. Hammond recognized the name as being that of the sender of the package. Hammond stated that during the search he was in the living room where the telephone and answering machine were located. The machine was activated when calls came in and nothing was done by the officers to make the telephone or answering machine operable. Messages were clearly audible and no acts were taken to turn up the volume. Likewise, officers took no steps to decrease the volume. Hammond did not ask the defendants if they wished the volume turned down and does not recall whether defendant Montgomery made such a request.

### III.

### A. BRANCH ONE

■ Defendants' first contention is that Judge O'Grady abandoned his neutral and detached role when he issued the search warrant for 97 Rumsey Road. Thus, the defendants argue that the sheriff's deputies could not have reasonably relied on the warrant, and the good faith exception of *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) does not apply. The sole ground for this contention appears to be that the description of items to be seized in the warrant is identical to the description of items contained in the affidavit. This circumstance, however, is not unusual and is to be expected. Therefore, the Court cannot conclude that, standing alone, this fact is sufficient to establish that the magistrate abandoned his neutral and detached role. There is nothing in the record to indicate that Judge O'Grady acted as "an adjunct law enforcement officer," as in *Lo–Ji Sales, Inc. v. New York*, 442 U.S. 319, 326–27, 99 S.Ct. 2319, 2324–

25, 60 L.Ed.2d 920 (1979), or that he acted merely as a rubber stamp for the police in the manner contemplated in *Aquilar v. Texas*, 378 U.S. 108, 111, 84 S.Ct. 1509, 1512, 12 L.Ed.2d 723 (1964).

■ Defendants' second argument in favor of suppression asserts that the warrant authorized sheriff's deputies to violate Ohio's drug trafficking laws by delivering the package of methamphetamine to 97 Rumsey Road. According to defendants, law enforcement officers are exempt from these laws to the extent they purchase, collect, or possess controlled substances, but that there is no such exemption for sale or delivery of controlled substances. *See* Ohio Rev.Code Ann. § 3719.14 (Anderson 1988).

The Court finds defendants' interpretation of Ohio law to be incorrect. In *State v. Rowan*, 32 Ohio App.2d 142, 288 N.E.2d 829 (Summit Co.Ct.App.1972), the court rejected a similar argument in regard to proposed jury instructions and held that a law enforcement officer may, pursuant to Ohio Rev.Code § 3719.14, sell or deliver drugs when the purpose of such conduct is to ferret out the illegal drug traffic and bring to justice those engaged in it. In light of *Rowan*, defendants' argument is without merit.

Defendants also challenge the validity of the search warrant on the ground that it is overly broad. Defendants contend that the warrant is specific only as to the package which the deputies planned to deliver and that the affidavit provided no basis for believing that any of the other items authorized to be searched for and seized would be located at 97 Rumsey Road. Because of this "boilerplate" description, defendants assert that the search warrant is a general warrant forbidden by the Fourth Amendment.

■ General warrants are clearly unconstitutional under the Fourth Amendment. *Andresen v. Maryland*, 427 U.S. 463, 478–82, 96 S.Ct. 2737, 2747–49, 49 L.Ed.2d 627 (1976); *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971); *United*

*States v. Savoca,* 761 F.2d 292, 298–99 (6th Cir.1985), *cert. denied,* 474 U.S. 852, 106 S.Ct. 153, 88 L.Ed.2d 126 (1985). A general warrant, by failing to describe the things to be seized, creates a danger of unlimited discretion in the executing officer's determination of what is subject to seizure. So long as officers can distinguish between legally and illegally possessed property on the basis of objective, articulated standards, a search warrant based on probable cause may direct inspection of a premises for a generic class of items believed to be contraband without violating the prohibition against general warrants. *United States v. Pollock,* 726 F.2d 1456, 1465–66 (9th Cir.1984). For example in *Andresen,* 427 U.S. at 479–82, 96 S.Ct. at 2748–49, the Supreme Court found that language in a warrant directing police to seize an exhaustive list of particularly described documents "together with other fruits, instrumentalities and evidence of crime at this [time] unknown" did not render a search warrant unconstitutionally general since the clause clearly referred to the specific crime that was the object of the search. *See also Pollock,* 726 F.2d at 1465–66.

■ In the present case, defendants' argument that the warrant is too general in its description of the articles, other than the package, to be searched for and seized must fail. The challenged language following the description of the package indicates that specific items were to be searched for and seized, including other controlled substances; records of drug trafficking; tools used to manufacture, store or sell drugs; monies derived from drug trafficking; and evidence of ownership or occupancy of the premises. The language is clearly limited to the specific crimes of aggravated trafficking in drugs and drug abuse, and so does not authorize a "general rummaging" through the defendants' possessions for evidence of any crime. Thus, the warrant is sufficiently specific in its language to provide an objective, articulated standard for the executing officers to use to distinguish between legally and illegally possessed property.

■ Finally, defendants' principal argument under branch one is that the warrant was not supported by probable cause. It is well established that an issuing magistrate's determination of probable cause should be given great deference by reviewing courts, *United States v. Pelham,* 801 F.2d 875, 877 (6th Cir.1986) (quoting *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969)), *cert. denied,* 479 U.S. 1092, 107 S.Ct. 1305, 94 L.Ed.2d 160 (1987), and that there is "a presumption that a magistrate has properly performed his duty with regard to whether an affidavit for a search warrant shows probable cause." *United States v. Missouri,* 644 F.Supp. 108, 110 (E.D.Mich.1986) (citing *United States v. Giacalone,* 541 F.2d 508, 513–14 (6th Cir.1976). The Fourth Amendment creates a strong preference for searches conducted pursuant to a warrant; consequently, the standard for review of an issuing judicial officer's probable cause determination is that so long as the judicial officer had a substantial basis for concluding that a search would uncover evidence of wrongdoing, the Fourth Amendment requirement is satisfied. *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983) (quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)); *United States v. Pelham,* 801 F.2d at 877–78.

■ The probable cause standard is a "practical nontechnical conception." *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). An affidavit is sufficient if it recites facts and circumstances from which a reasonably prudent person would conclude that an offense has been committed and that evidence thereof will be found at the place to be searched. *United States v. Besase,* 521 F.2d 1306, 1307 (6th Cir.1975).

In *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court rejected the two-pronged test established in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969),

that had been used to determine whether an affidavit made possible a finding that probable cause existed and readopted a "totality of the circumstances" approach. A court must look to the affidavit as a whole and assess whether there was sufficient information to allow a judicial officer to find probable cause. *United States v. Sorrells*, 714 F.2d 1522, 1528 (11th Cir.1983). Applying the *Gates* analysis to the affidavit at issue, the Court finds that it contains sufficient information to establish probable cause to support the challenged warrant.

■ In his affidavit in support of the search warrant, Detective Spiert describes in detail how the package came to be seized, the contents of the package, including the written notations, the manner in which the package was shipped, the steps taken by UPS personnel to obtain an accurate name and address for delivery of the package, and the positive testing of the enclosed substance for methamphetamine. The affidavit further made clear that the warrant would not be executed until after Corporal Powell attempted delivery of the package. In the Court's view, these circumstances clearly provide a substantial basis for concluding that probable cause existed to believe that evidence relating to the crimes of aggravated trafficking in drugs and drug abuse would be found at 97 Rumsey Road, Columbus, Ohio on December 21, 1988.

■ Defendants raise three additional arguments as to why they believe the warrant in this case was invalid. First, they claim that the warrant was not properly made contingent upon actual delivery of the package. They concede that anticipatory warrants such as this one have gained growing acceptance, but assert that the warrants have been approved only where the warrant is expressly contingent upon delivery, *see United States v. Garcia*, 882 F.2d 699, 704 (2d Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989) or where the contraband has been placed in the United States mail, *see United States v. Dornhofer*, 859 F.2d 1195, 1198 (4th Cir.1988), *cert. denied*, 490 U.S. 1005, 109 S.Ct. 1639, 104 L.Ed.2d 155

(1989). But these methods do not exhaust the means by which an anticipatory warrant may be properly issued. The determining factor in *Garcia, Dornhofer,* and the other cases cited therein, is whether the contraband "is on a sure course to its destination." 882 F.2d at 702; 859 F.2d at 1198 (citations omitted). The Court finds that once the package was placed in Corporal Powell's possession for delivery it was on as sure a course to its destination at 97 Rumsey Road as if it had been placed in the mail or any other method had been used. Furthermore, the Court is not faced with the fact of a failed delivery, and, therefore, need not decide the effect of such a failure on probable cause. It may be that such a failure would void the warrant, *see Garcia*, 882 F.2d at 702 (dicta), but this is not to say that a warrant issued before the events have occurred which will allow a constitutional search of the premises is not based on probable cause. *Id.*

■ Second, defendants argue that the affiant's failure to specify the basis for his belief that defendant Upton in fact resided at 97 Rumsey Road. They state that the lack of such information in the affidavit was fatal to the underlying search warrant in *United States v. Brown*, 832 F.2d 991, 994 (7th Cir.1987), *cert. denied*, 485 U.S. 908, 108 S.Ct. 1084, 99 L.Ed.2d 243 (1988). Yet the circumstances in *Brown* are quite dissimilar to those in the instant case. Unlike this case, *Brown* did not involve an anticipatory search warrant based on the controlled delivery of contraband. Neither the affiant nor the magistrate in this case had any reason to doubt that the package, which was addressed to Mr. John Upton, 97 Rumsey Road, Columbus, Ohio 43207 was not properly addressed. This is particularly apparent given the careful manner in which the contraband was packaged and notations indicating a considerable value of $2400.00. Therefore, the lack of information in the affidavit concerning affiant's knowledge that John Upton in fact resided at 97 Rumsey Road, does not abrogate probable cause.

■ Third, defendants contended that even if probable cause existed to search for

the package, there was no probable cause to support the authorization to search for the other articles specified in the warrant. Defendants again rely on *Garcia*, 882 F.2d at 704, to support their contention that where the only evidence of drug trafficking consists of delivery of the contraband, a warrant which allows officers to search for other articles may be overbroad. The Court does not read *Garcia* to invalidate the additional authorization on this case; in fact, that court explained that the scope of a search under an anticipatory warrant should be no narrower than the scope of a search which would be allowed under the "exigent circumstances" exception. *Id.* This Court finds that based on the circumstances surrounding the packaging and sending of the contraband, there was a substantial basis for concluding that probable cause existed to search the Rumsey Road address not only for the package, but also for other evidence relating to aggravated trafficking in drugs and drugs abuse. Moreover, the Court has already determined that the warrant was not overbroad and, hence, not a general warrant prohibited by the Fourth Amendment.

In conclusion, the Court finds that probable cause was stated to support the search warrant at issue. Additionally, even were probable cause not stated, the evidence seized pursuant to the search would be admissible under the good faith exception to the exclusionary rule established in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The affidavit on which the warrant was based was certainly not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923, 104 S.Ct. at 3421. Nor was the warrant "so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.* In short, the Court finds no basis for concluding that the officers who executed the warrant did so in other than an objectively good faith manner.

## B.  BRANCH TWO

Defendants argue in branch two of their motion that the contents of the package should be suppressed as evidence because the removal of the contents and the chemical testing of them by law enforcement officers violated defendants' expectation of privacy. For this proposition, defendants rely upon *Walter v. United States*, 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980). In *Walter*, employees of a private company opened mistakenly delivered cartons, found individual boxes of film inside that appeared to be contraband, and turned the packages over to an agent of the Federal Bureau of Investigation. Later, without obtaining a warrant, FBI agents viewed the films using a projector. *Id.* at 651–52, 100 S.Ct. at 2399. Although there was no single opinion of the Court, a majority found a violation of the Fourth Amendment and reversed petitioner's conviction on federal obscenity charges. Six justices in two separate opinions, while disagreeing as to the result, were of the view that the legality of the governmental search under these circumstances must be tested by the scope of the antecedent private search. *See United States v. Jacobsen*, 466 U.S. 109, 115–16, 104 S.Ct. 1652, 1657–58, 80 L.Ed.2d 85 (1984) (explaining *Walter*).

The government correctly points out that *Jacobsen* is much more analogous to the facts of this case than *Walter*. In *Jacobsen*, employees of a private carrier examined the inside of a damaged package and found a series of four zip-lock plastic bags, the innermost of which contained approximately six and a half ounces of white powder. The employees rewrapped the package and notified agents of the Drug Enforcement Administration. When DEA agents arrived, the box was still wrapped but its top was open and a hole was punched in its side. Without obtaining a warrant, the agents removed the plastic bags and then removed a small amount of the white powder for testing. A field test revealed that the substance was cocaine. Later, agents rewrapped the package and obtained a warrant to search the place to which it was addressed. 466 U.S. at 111–12, 104 S.Ct. at 1655.

The Supreme Court distinguished *Walter* and held that the agents' viewing of what a private party had freely made available for their inspection was not a "search" within the meaning of the Fourth Amendment. *Id.* at 119–20, 104 S.Ct. at 1659–60. The Court reasoned that respondents could have no privacy interest in the contents of the package since it had just been examined by employees of the private company and remained unsealed. *Id.* The removal of the plastic bags and their visual inspection by DEA agents revealed nothing more than what had previously been revealed by the private search. *Id.* at 120, 104 S.Ct. at 1660. The Court further held that while the agents did "seize" the package, their warrantless seizure was not unreasonable under the Fourth Amendment given the fact that the plastic bags contained contraband and little else. *Id.* at 120–21, 104 S.Ct. at 1660.

The Court went on to analyze the field test separately, and concluded that a chemical test which merely reveals whether or not a substance is cocaine does not infringe upon any legitimate privacy interest. *Id.* at 122–23, 104 S.Ct. at 1661. It also concluded that the destruction of the minute amount of powder during the field test was reasonable because the "seizure" could, at most, have had only a de minimis impact on any protected property interest. *Id.* at 125, 104 S.Ct. at 1662.

The Court is also guided by three Sixth Circuit decisions. In *United States v. Rodriquez*, 596 F.2d 169, 175 (6th Cir.1979), the court validated the seizure of packages by police following a private search on the basis of the plain view doctrine where the contents appeared to be narcotics packaged in plastic bags; the shipper had lied to the carrier about the contents; and the packages were garnished with talcum powder, a method used by narcotics traffickers to fool drug-sniffing dogs. These facts satisfied the requirement that the incriminating nature of the object be immediately apparent. *Id.* The panel specifically noted that an inconclusive field test did not make the incriminating nature of the powder less apparent; it simply necessitated more extensive laboratory tests to prove what po-

lice already had sufficient cause to believe. *Id.* Although *Rodriquez* was decided prior to either *Walter* and *Jacobsen*, the Sixth Circuit again applied the plain view doctrine under similar circumstances in *United States v. Morgan*, 744 F.2d 1215, 1222–24 (6th Cir.1984) which was decided after *Jacobsen*.

More importantly, *United States v. Barry*, 673 F.2d 912, 918–19 (6th Cir.1982), *cert denied*, 459 U.S. 927, 103 S.Ct. 238, 74 L.Ed.2d 188 (1982) held that the risk that a freight carrier would open a package for some legitimate purpose or due to accident, together with the failure by the principals to take precautions to protect their privacy interest from the risk of exposure, meant that the defendant had no reasonable expectation of privacy in the package. It is worth noting that Barry, like defendant Upton, was the recipient of the narcotics package. *Id.* at 913. According to the court, *Walter* was distinguishable since the latter turned on the fact that the material seized was protected by the First Amendment. *Morgan* subsequently reaffirmed the holding in *Barry* in light of the Supreme Court's decision in *Jacobsen*. 744 F.2d at 1219.

■■■■■ Based on the foregoing cases, the Court finds that the visual examination by Detective Spiert following the private search by UPS employees was not a "search" within the meaning of the Fourth Amendment. His field test of the contents for cocaine likewise invaded no legitimate privacy rights of the defendants. The seizure of the package was also reasonable under the Fourth Amendment given its immediate apprehension as contraband. Moreover, any "seizure" resulting from the destruction of the trace amount of powder needed for the field test had only a de minimis impact on defendants' legitimate property interests.

■■■ The subsequent chemical testing of the powder at the Columbus Police Crime Lab, without a warrant, is a more difficult question. One circuit court has refused to extend *Jacobsen*'s field test exception to a chemical test that did not merely disclose

whether or not the substance was a particular substance, but also revealed the molecular structure of the substance. *United States v. Mulder*, 808 F.2d 1346 (9th Cir. 1987). The court reasoned that the laboratory test could have revealed an arguably private fact. *Id.* at 1348–49. In this case, the evidence shows only that the subsequent testing at the crime laboratory positively identified the powder as methamphetamine. The precise nature of the testing is thus not apparent. Defendants have not established, or even argued, that the chemical test could have revealed an arguably private fact, and as proponents of the motion to suppress, they have the burden of establishing that the challenged search infringed upon their legitimate expectation of privacy. *United States v. Sangineto–Miranda*, 859 F.2d 1501, 1510 (6th Cir. 1988) (citing *Rakas v. Illinois*, 439 U.S. 128, 130 n. 1, 99 S.Ct. 421, 424, n. 1, 58 L.Ed.2d 387 (1978)). In any event this Court believes that where the substance is obviously contraband and little else, and is not arguably protected by the First Amendment, chemical testing of the substance without a warrant does not infringe upon any legitimate privacy interest regardless of the nature of the test. The Court further determines that the destruction of a trace amount of the powder during testing was a reasonable "seizure" given the fact that such destruction had only a de minimis impact on defendants' property interests.

## C. THE SUPPLEMENTAL MOTION

In their supplemental motion, defendants seek to exclude as evidence the contents of the two audio cassettes which sheriff's deputies seized during their search of the premises. Although the specific ground relied upon by defendants involves the failure of law enforcement officers to obtain a wiretap warrant pursuant to 18 U.S.C. § 2516 and O.R.C. § 2933.53–.55 prior to seizing, replaying, and transcribing the tapes, the Court will first consider the government's contention that the tapes were within the scope of the search warrant and were, thus, properly seized.

The search warrant authorized the deputies to search for and seize, inter alia, the following articles:

1. any records, ledgers, or documents indicating the trafficking in drugs;

2. any tools, instruments, equipment or paraphernalia used to manufacture, store, process or sell drugs of abuse; and

3. papers, documents, or utility records indicating ownership or occupancy of the premises known as 97 Rumsey Road, Columbus, Ohio.

At the evidentiary hearing, testimony established that one of the two tapes contained only an introduction by the owner of the answering machine; thus, it would indicate ownership or occupancy of the premises as well. Detective Spiert further testified that as a veteran narcotics officer, he is aware of the frequent use of answering machines and telephones as tools in the drug trade.

In *United States v. Meriwether*, 917 F.2d 955, 958 (6th Cir.1990), the court likened the seizure of a pager capable of storing and displaying telephone numbers to the seizure of a personal telephone book believed to contain telephone numbers of customers and suppliers. Since the warrant specifically authorized agents to search for and seize telephone numbers of customers, suppliers, and couriers, the seizure of appellant's telephone number from the pager was authorized by the warrant. *Id.* The court also noted the pager's fundamental importance in today's drug trade. *Id. Meriwether* cited with approval *United States v. Reyes*, 798 F.2d 380, 383 (10th Cir.1986), where the court held that the seizure of a cassette tape was within the scope of a warrant authorizing the seizure of "drug trafficking records, ledgers, or writings identifying cocaine customers, sources, [etc.]." The *Reyes* court reasoned that "in [this] age of modern technology and commercial availability of various forms of items, the warrant could not be expected to describe with exactitude the precise forms of items," *id.* at 383, and the Sixth Circuit expressly adopted this rationale in *Meriwether*, 917 F.2d at 958.

Based on the foregoing, the Court finds that the two audio cassettes seized from defendants' answering machine were authorized by the warrant to be searched for and seized because they could constitute records of drug trafficking, tools used in the sale of drugs, or evidence of ownership or occupancy of the premises. The Court will, therefore, now turn to defendants' arguments that the seizure, replay and transcription of the tapes by law enforcement officers should result in suppression of the tapes' contents because such actions invaded defendants' legitimate expectation of privacy and violated federal and state wiretap statutes.

The question of whether a person has a "constitutionally protected expectation involves a two step inquiry: first, has the individual manifested a subjective expectation of privacy in the object of the challenged search? Second, is society willing to recognize that expectation as reasonable?" *California v. Ciraolo*, 476 U.S. 207, 211, 106 S.Ct. 1809, 1811, 90 L.Ed.2d 210 (1986) (citing *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (Harlan, J., concurring)). Applying this test, the Court finds that defendants had no reasonable expectation of privacy in the contents of answering machine tapes activated by calls received while the deputies were lawfully on the premises. The speaker on the answering machine was turned on, making incoming calls clearly audible to any person present in the room. Thus, the situation is identical to the one encountered in *United States v. Whitten*, 706 F.2d 1000, 1011 (9th Cir.1983) where the court reached the same result.

The court in *Whitten* went on to apply the plain view doctrine to the remainder of the tape where the agents, in attempting to verify the message overheard, rewound the tape and inadvertently heard previously recorded messages. *Id.* at 1011. Defendants urge this Court to distinguish *Whitten* on the grounds that the deputies who replayed and transcribed the tapes here did not act inadvertently. However, given the Supreme Court's recent decision in *Horton v. California*, —— U.S. ——, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990) that inadvertence is not a requirement under the plain view doctrine, this Court is unsure that this distinction makes any difference. The Court, therefore, finds that seizing, replaying and transcribing the tapes in question did not violate defendants' Fourth Amendment rights where the deputies were lawfully on the premises, the incriminating nature of the messages was immediately apparent and the scope of the warrant authorized the officers to search for and seize those tapes.

Defendants also assert that the seizure of the tapes was an illegal "interception" in violation of Title III, as revised by the Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq.* (1988), as well as, Ohio Rev.Code §§ 2933.51, *et seq.* They further contend that all evidence obtained from the seizure should be suppressed pursuant to 18 U.S.C. § 2518(10)(a).

Under the ECPA, the interception of electronic communications is unlawful.

Except as otherwise specifically provided in this chapter, any person who (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, oral or electronic communication; ... [shall be subject to sanctions].

18 U.S.C. § 2511(1) (1988). "Intercept" is defined in Title III as the "aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical or other device ..." § 2510(4); *Meriwether*, 917 F.2d at 959–60.

Based on this statutory language, and similar language found in the Ohio wiretap statutes, the Court holds that the deputies did not "intercept" any "wire, oral, or electronic communication" when they overheard the answering machine during their search of the premises. Rather than acquiring the contents of oral communications by "electronic, mechanical or other devices," they simply overheard clearly audible transmissions while they were lawfully in the same room as the answering machine. *See Meriwether*, 917 F.2d at 960 (citing *United States v. McLeod*, 493 F.2d

1186, 1188 (7th Cir.1974)). The Court further holds that the deputies did not "intercept" any "wire, oral, or electronic communication" when they later replayed and transcribed the contents of the tapes. This finding is in accord with *United States v. Turk*, 526 F.2d 654 (5th Cir.1976), *cert. denied*, 429 U.S. 823, 97 S.Ct. 74, 50 L.Ed.2d 84 (1976), one of the principal cases cited by defendants. In *Turk*, the court found that a definition of "intercept" which excludes the replaying of a previously recorded conversation "has a much firmer basis in the language of § 2510(4) and in logic, and corresponds more closely to the policies reflected in the legislative history." *Id.* at 658. The court, thus, rejected the argument that a different "aural acquisition" occurs each time a recording of an oral communication is replayed. *Id.*

Based on the foregoing, the Court finds that no violation of Title III, as amended by the ECPA, or of Ohio Rev.Code §§ 2933.51, *et seq.*, occurred and, therefore, no sanction is warranted under 18 U.S.C. § 2511. The Court, moreover, doubts that even if such a violation had occurred, suppression would have been available given the Court's determination that there was no constitutional violation. *See Meriwether*, 917 F.2d at 960 ("the ECPA does not provide an independent statutory remedy of suppression for interceptions of electronic communications").

### IV.

For all of the above reasons, defendants' motions to suppress evidence and supplemental motions to suppress evidence are DENIED.

IT IS SO ORDERED.