**UNITED STATES of America,**
**Plaintiff,**

v.

**Odell BEARD, Defendant.**

**No. CRIM. 99–50005.**

United States District Court,
E.D. Michigan,
Southern Division.

June 28, 1999.

Kenneth S. Karasick, Flint, MI, for Odell Beard, defendant.

Mark C. Jones, U.S. Attys. Office, Flint, MI, for U.S.

## MEMORANDUM OPINION AND OR- DER DENYING DEFENDANT'S MOTION TO SUPPRESS EVI- DENCE

GADOLA, District Judge.

Presently before the Court is defendant Odell Beard's motion to suppress evidence filed May 7, 1999. Defendant challenges the seizure of evidence pursuant to a search warrant executed on January 5, 1999 at defendant's residence located at 5910 Oxley, Flint, Michigan. Specifically, defendant attacks the affidavit in support of the search warrant as lacking in suffi- cient facts to allow a finding of probable cause. The government responded on May 18, 1999. No reply brief has been filed by defendant. Oral argument on the instant motion previously scheduled for June 11, 1999 was canceled upon stipula- tion of the parties. *See* order entered May 26, 1999. Accordingly, the instant motion will be decided on the briefs previously submitted by the respective parties.

For the reasons set forth below, the Court will deny defendant's motion to sup- press evidence.

## I. FACTUAL BACKGROUND

On February 3, 1999, the government filed a three-count indictment against de- fendant. The three-count indictment al- leges that defendant committed the follow- ing offenses: (1) possession of sawed-off shotguns in violation of 26 U.S.C. §§ 5861(d), 5845(a), and 5871 (Count I); (2) possession of firearms without serial number in violation of 26 U.S.C. §§ 5861(i) and 5871 (Count II); and (3) possession of stolen firearm (Count III).

Previously, on January 5, 1999, police officers executed a search warrant at de- fendant's residence, located at 5910 Oxley, Flint, Michigan. The search warrant at issue provides a list of locations to be searched, including "5910 Oxley and at- tached garage/Flint, Michigan." *See* Search Warrant, p. 2, attached as Exh. 2 to the government's brief in response. The warrant also provides a description of target items categorized as (a) drugs and drug paraphernalia, (b) guns and gun par- aphernalia, (c) records, (d) bloodied cloth- ing, (e) U.S. currency, (f) records of owner- ship. *See id.* pp. 6–7. The following items were seized from defendant's residence: two sawed-off shotguns without serial numbers and one .357 revolver with serial number. The revolver was later deter- mined to have been stolen.

The application and affidavit for search warrant were prepared by Cedric A. Ken- dall, a Flint Police Department officer as- signed to the Drug Enforcement Adminis- tration Task Force (DEATF) with eleven and one-half years' experience and four years' experience with the DEATF. *See* application and affidavit for search war- rant (hereinafter "Affidavit"), attached as Exh. 2 to the government's brief in re- sponse, p. 7 ¶ 1. Officer Kendall asserts that he has had 10 years of experience in controlled substance investigations, has participated in numerous arrests resulting in felony convictions and has participated in the execution of over 100 search war- rants involving trafficking of all types of controlled substances. *See* Affidavit, p. 7, ¶ 2. In addition, Officer Kendall maintains that he has received "formal education in the identification of all types of controlled substances and the customs and habits of users and dealers of the same." *See* Affi- davit, p. 7, ¶ 3.

The affidavit at issue details the circum- stances surrounding the murders of Lee David Strickland and his sister, Fanny Strickland. These two individuals were killed outside King's Fish and Barbeque, located at 3810 Clio Road, Flint Michigan

on September 21, 1995. The affidavit further explains that Eric Williams was also severely wounded at the scene of the murders and that 80 grams of cocaine was seized at the murder scene. *See* Affidavit, p. 8, ¶ 4. Two suspects were subsequently indicted for the murders, Ervin Junius Thornton II and Tederick Lemair Jones. Officer Kendall testifies that he was very familiar with the Thornton investigation because he was one of the case agents involved in that matter. *See* Affidavit, p. 8, ¶ 6.

The *Thornton* trial was conducted in November 1998, the Honorable Paul V. Gadola, presiding. *See U.S. v. Thornton,* 17 F.Supp.2d 686 (E.D.Mich.1998) (Criminal Case No. 97–50021–01) (denying defendant Thornton's pretrial motion to suppress out-of-court statements made to police following indictment and arrest on murder and drug-related charges). During the trial, Tederick Lemair Jones testified against Thornton and received a considerable amount of *Flint Journal* coverage, despite the government's request that the newspaper not identify names of witnesses. As a result, it became a matter of common knowledge that a person named "Jones" (i.e., "Tederick Jones") had testified against one the larger drug dealers in Flint, to wit Ervin Junius Thornton II. On November 23, 1998, Thornton was convicted on all counts. *See* Affidavit, pp. 8–9, ¶¶ 8 and 9.

As the affidavit recounts, the other co-defendant with the last name of "Jones" also listed in the *Thornton* indictment was one Terence Bruce Jones. This defendant pleaded guilty on November 10, 1998 pursuant to a Rule 11 plea agreement. The fact that he had pleaded guilty was also reported in the *Flint Journal* with an explanation that several witnesses were expected to testify against Thornton. *See* Affidavit, pp. 8–9, ¶¶ 7 and 9.

Before giving any testimony, however, Terence Bruce Jones was murdered. On or about December 4, 1998, he was shot twice in the head at his residence located at 3108 Myrtle Road, Mt. Morris, Michigan. A pry-type tool had been used to gain entrance to the residence and blood from one of the suspects was left at the scene. The blood in the residence raised the possibility of blood samples being used for analysis. *See* Affidavit, pp. 9–10, ¶ 10. While the officers were at the murder scene, they had contact with one Terrell Deshon Hunter. The officers overheard another individual asking Mr. Hunter if he had murdered Terence Bruce Jones. *See* Affidavit, pp. 9–10, ¶¶ 9 and 10.

The affidavit further states that the police believed that Terence Bruce Jones, the decedent, was a drug dealer. On January 15, 1997, a search warrant was executed at one of his prior residences. At that location, approximately 64.5 grams of marijuana was seized along with drug paraphernalia and a handgun. In addition, Terence Bruce Jones had previously admitted to being a drug dealer. *See* Affidavit, p. 8, ¶ 7.

The affidavit explains that on December 4 and 7, 1998, Detective Sergeant Dunklee spoke with one Angelia Akins. Ms. Akins was the paramour of the deceased, and as such well-familiar with his activities. Affiant asserts that "[s]ince Mr. Jones was under federal indictment, his drug supplier was undoubtedly concerned with whether he would cooperate." *See* Affidavit, p. 9, ¶ 10(c). Ms. Akins allegedly identified Terence Bruce Jones's supplier as an individual named "O'Dell" (later identified as defendant Odell Beard, residing at 5910 Oxley, Flint, Michigan). *Id.* Ms. Akins purportedly stated that defendant Beard had been selling two to four pounds of marijuana per day since the last day he had been in court, i.e. since November 10, 1998. *Id.*

The affiant further explains that Captain Jerome Koger of the Flint Police Department had observed defendant Beard at 5910 Oxley, Flint, Michigan during the last 20 years, confirming that defendant resided at that location. Captain Koger also allegedly told the affiant that the Flint Police Department had received informa-

tion from an informant that on many occasions defendant had received hundreds of pounds of marijuana from "down south" to sell in Flint, Michigan. *See* Affidavit, p. 10, ¶ 10(d).

Information was also provided in the affidavit regarding "June," later identified as Leon Truman Spight, Jr., another suspect in the murder of Terence Bruce Jones. *See* Affidavit, p. 10, ¶ 12. An anonymous informant had telephoned Detective Sergeant Dunklee at the Mt. Morris Township police station. The informant stated that "June," in the company of another unidentified person, had abandoned June's gray four-door Cadillac after the murder upon developing car trouble. The informant had allegedly seen them running from the vehicle after the murder which occurred on December 3, 1998. *Id.*

The affidavit also discusses information provided by Tederick Jones relating to other drug traffickers. *See* Affidavit, pp. 9–13. The affidavit concludes with a discussion of Law Enforcement Information Network (LEIN) information regarding various persons previously mentioned in the affidavit. *See* Affidavit, pp. 15–18. Included in the LEIN information were specifics regarding defendant, showing that he had several vehicles registered to 5910 Oxley, Flint, Michigan and that he was using the location as his current address. *See* Affidavit, p. 15, ¶ 20.

## II. STANDARD OF REVIEW

The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation...." U.S. CONST. amend. IV. Probable cause to search has been defined as a "fair probability" that contraband or other evidence of a crime will be found at the place to be searched. *See Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *see also United States v. Savoca,* 761 F.2d 292, 297 (6th Cir.1985) (holding that the "critical element in a reasonable search ... is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to

which entry is sought") (citing *Zurcher v. Stanford Daily,* 436 U.S. 547, 556, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978), *cert. denied,* 474 U.S. 852, 106 S.Ct. 153, 88 L.Ed.2d 126 (1985); *United States v. Lockett,* 674 F.2d 843 (11th Cir.1982) (holding that the evidence was insufficient to support a finding of probable cause to search for dynamite on defendant's property without some showing that dynamite was being stored there).

Probable cause is assessed in light of the "totality of circumstances." *Gates,* 462 U.S. at 238, 103 S.Ct. 2317. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* A reviewing court should not examine *de novo* the sufficiency of an affidavit supporting a warrant. *Id.* at 236, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527. Rather, "the traditional standard for review of an issuing magistrate's probable-cause determination has been that so long as the magistrate had a 'substantial basis ... for conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *United States v. Pelham,* 801 F.2d 875, 878 (6th Cir.) (quoting *Gates,* 462 U.S. at 236, 103 S.Ct. 2317), *cert. denied,* 479 U.S. 1092, 107 S.Ct. 1305, 94 L.Ed.2d 160 (1987). The reviewing court should pay great deference to a magistrate's probable cause determination and should not set aside a magistrate's finding of probable cause unless it is "arbitrary." *United States v. Weaver,* 99 F.3d 1372, 1377 (6th Cir.1996); *see also Massachusetts v. Upton,* 466 U.S. 727, 732–33, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984); *United States v. Pelham,* 801 F.2d at 877 (citing *United States v. Swihart,* 554 F.2d 264, 270 (6th Cir.1977)). In doubtful or marginal cases, the reviewing court should uphold the

magistrate's finding. *Lockett,* 674 F.2d at 845. The rationale for this deference stems from a preference for the search warrant process over warrantless searches. *Id.*

In *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court rejected the strict, two-pronged probable cause test established in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). That test required that a search warrant affidavit based on an informant's tip contain information regarding the "reliability or credibility" of the informant as well as the "basis in knowledge" of his or her tip. In *Gates,* the Supreme Court explained that while these elements " 'may usefully illuminate the commonsense, practical question of whether there is "probable cause" to believe that contraband or evidence is located in a particular place,' they should not be '[understood as entirely separate and independent requirements to be] rigidly exacted in every case....'" *United States v. Pelham,* 801 F.2d 875, 877 (6th Cir.1986) (quoting *Gates,* 462 U.S. at 230, 103 S.Ct. 2317). *Gates* established that courts must apply a "totality of the circumstances" approach in determining the existence of probable cause. *See id.* "Probable cause is a 'practical, nontechnical conception' that deals with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act.'" *Id.* at 230–231, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (quoting *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)).

## III. ANALYSIS

Defendant asserts that the application and affidavit for search warrant fail to set forth facts sufficient to demonstrate a fair probability that contraband or evidence of a crime would be found at defendant Beard's residence, 5910 Oxley, Flint, Michigan. Defendant argues that his name appears in only two places in the affidavit and that he is not mentioned in conjunction with any other individuals named in the affidavit. Defendant further maintains that the affidavit fails to provide any information as to the "veracity" and "basis of knowledge" of the hearsay information provided by informants. According to defendant, the affidavit also fails to demonstrate that the police corroborated the information through any independent investigation. In support of his position, defendant relies principally upon two Sixth Circuit cases, *United States v. Weaver,* 99 F.3d 1372 (1996) and *United States v. Allen,* 168 F.3d 293 (1999).

In response, the government argues that the application and affidavit do provide sufficient facts to establish probable cause to search defendant's residence. According to the government, the affidavit details a broad range of information relating to the training and experience of Officer Kendall and further explains the types of evidence which this officer has found at locations under the dominion and control of drug traffickers and persons involved in violent crimes. *See* Affidavit, pp. 18–20, ¶¶ 34–37. In addition, the government points out that a reasonable inference exists in a case such as the present one involving narcotics that evidence of contraband is likely to be found where the drug dealer lives. *See United States v. Angulo-Lopez,* 791 F.2d 1394, 1399 (9th Cir.1986); *see also United States v. Davidson,* 936 F.2d 856, 860 (6th Cir.1991). The government further maintains that probable cause may continue for weeks or months after the last incident of suspect activity. At the very least, according to the government, the supporting affidavit provided probable cause to search for drug records at defendant's residence. As a result, the seizure of the sawed-off shotguns and handgun would therefore have been valid under the plain view doctrine. *See Horton v. California,* 496 U.S. 128, 140, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).

▪ Applying the standard for determining probable cause articulated in *Illi-*

nois v. Gates, supra, this Court holds that under the "totality of the circumstances" the affidavit does support a finding that a fair probability existed that contraband or other evidence of a crime would be found at defendant's residence. As discussed above, the affidavit provided detailed information obtained from the deceased's paramour, one Ms. Angelia Akins. Ms. Akins identified defendant Beard as the drug *supplier* of the deceased. *See* Affidavit, p. 9, ¶ 10(c). Moreover, Ms. Akins purportedly stated that defendant Beard had been selling two to four pounds of marijuana per day since the last day he had been in court, i.e. since November 10, 1998. *Id.*

In addition, the affidavit discussed information provided to Captain Koger by an anonymous informant that *on many occasions* defendant had received *hundreds of pounds* of marijuana from "down south" to sell in Flint, Michigan. *See* Affidavit, p. 10, ¶ 10(d). Although the affidavit does not discuss the "reliability," "credibility" or "basis in knowledge" of this tip, such omission is not necessarily fatal. As the Supreme Court in *Gates* made clear, these considerations, while useful, are not required for a finding of probable cause. *See Gates*, 462 U.S. at 230, 103 S.Ct. 2317; see also *United States v. Pelham*, 801 F.2d 875, 877 (6th Cir.1986). The anonymous informant's tip coupled with Ms. Akins's statements to police provided more than sufficient information relating to defendant's involvement in drug trafficking and dealing to justify a finding of probable cause to believe that drugs and/or records of drug transactions would be found at his residence.

In *United States v. $149,442.43 in U.S. Currency*, 965 F.2d 868 (10th Cir.1992), a case similar to the present one, the Tenth Circuit held that information regarding defendant's involvement in drug trafficking provided a sufficient nexus to establish probable cause to search for drug records at the defendant's residence. As the appellate court stated,

> [i]n accordance with our prior rulings, we conclude that a sufficient nexus was established between the evidence

sought, i.e., evidence of claimant Fisher's involvement with drug trafficking, and his residence. The circumstances described in the affidavit, indicate that claimant Fisher was a large drug dealer who had been dealing drugs over the years. This information combined with the opinion of Officer Fugate, an officer experienced in drug investigations, that drug dealers frequently keep records or notations of their transactions where they have ready access, provides a sufficient nexus for a reasonable person to conclude that drug records would be maintained at the claimant's home which was also his alleged place of business.

*Id.* at 874; *see also United States v. Riley*, 906 F.2d 841 (2d Cir.1990) (upholding search warrant authorizing officers to seize bank records, business records, and safety deposit box records from defendant's residence); *United States v. Upton*, 763 F.Supp. 232 (S.D.Ohio 1991) (upholding seizure of records of drug trafficking and evidence of ownership or occupancy); *United States v. Hatfield*, 599 F.2d 759 (6th Cir.1979) (upholding search warrant of premises for guns and firearms transaction records); *accord United States v. Williams*, 633 F.2d 742, 745–46 n. 5 (8th Cir.1980) (upholding seizure of records relating to banking, personal address books, other records, and notations of narcotics purchases and sales; *United States v. Coppage*, 635 F.2d 683, 686–87 (8th Cir.1980) (affirming search for books, records, chemical equipment, and personal papers relating to manufacture and distribution of methamphetamine).

The two cases relied upon by defendant are readily distinguishable from the case at bar. In *United States v. Weaver, supra*, the Sixth Circuit determined that the supporting affidavit lacked sufficient facts to warrant a finding of probable cause. In that case, police detective McCullough "prepared a preprinted form affidavit to obtain a search warrant for [defendant's] premises, with the intent 'to make a case for the felonious possession of marijuana

to keep the identity of the informant anonymous.' " *Weaver*, 99 F.3d at 1375. "McCullough's preprinted affidavit was composed of boilerplate text with a few open spaces for additional information...." *Id.* The informant had told the detective that on the previous day he had gone to the defendant's home with another individual and purchased one-half once of marijuana. *Id.* The informant told the detective that he believed defendant was growing marijuana at the residence, although he had not personally observed any indications of a growing operation. *Id.*

In *United States v. Allen*, *supra*, the Sixth Circuit again addressed the validity of a search warrant premised on a supporting affidavit, which the appellate court described as "basically a form type affidavit consisting of boilerplate text that was kept on file in the police department's computer." *Allen*, 168 F.3d at 296. This so-called "bare bones" affidavit was based solely on a tip from a confidential informant. The tip contained information that "three days earlier, the informant had seen [an individual later identified as the defendant] in possession of cocaine in an apartment located at 910 North Market Street." *Id.* As indicated, this tip provided the *only* factual basis for the magistrate judge's probable cause determination. Accordingly, the Sixth Circuit concluded that "under the totality of the circumstances ... the affidavit at issue was conclusory and 'bare bones' in that it failed to provide sufficient factual information for a finding of probable cause because it contained only the affiant's belief that probable cause existed...." *Id.* at 303 (citing *Gates*, 462 U.S. at 236, 103 S.Ct. 2317; *Whiteley v. Warden*, 401 U.S. 560, 564–65, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971)).

In contrast to the affidavits reviewed in *Weaver* and *Allen*, the affidavit in the instant case can hardly be characterized as a "bare bones" affidavit. In *Weaver* and *Allen* the persons identifying the respective defendants as drug dealers were *not* named in the affidavit and wished to remain anonymous. In the case at bar, Angelia Akins *was named* as an informant

and her identity as the paramour of the deceased provided further indicia of reliability and credibility. Moreover, the undisclosed informants in the prior appellate decisions had reported only one instance in which marijuana was allegedly seen at the defendant's residence. By contrast, in the instant case, Officer Kendall was provided with information that defendant Beard had received *hundreds of pounds* of marijuana from "down south" *on many occasions* in order to sell the same in Flint, Michigan.

An important additional distinguishing factor in the instant case relates to the fact that defendant Beard, in contrast with the defendants in both *Weaver* and *Allen*, was a suspect in the murder of a potential federal witness, Terence Bruce Jones. Ms. Akins had identified defendant as the drug supplier of the deceased. This information connected defendant with the deceased. Furthermore, a confidential informant had reported that a vehicle seen leaving the deceased's residence after the murder contained two individuals later seen running from the vehicle on the night of December 3, 1998.

In light of the foregoing, it is apparent that the affidavit contained sufficient facts to support a determination that probable cause existed to search defendant's residence. The search warrant at issue expressly provided that the following items, among others, may be searched for and seized: "firearms, ammunition, ammunition clips and magazines, holsters, firearms records." Since these items were explicitly targeted in the search warrant, there is no need for the government to rely upon the plain view exception to justify seizure of the two sawed-off shotguns and handgun.

Nevertheless, the Court finds that *even if* there were no probable cause to search for *weapons* but only probable cause to search for drugs and drug records, the plain view exception would apply to validate the seizure of these items. The plain view exception applies if the following requirements are met:

1. the firearms were in plain view;

2. the incriminating character of the firearms was immediately apparent, and

3. the firearms were viewed by an officer lawfully located in a place from where the object can be seen and seized by an officer who has a lawful right of access to the object itself.

See *Horton,* 496 U.S. at 142, 110 S.Ct. 2301. Although defendant in his motion to suppress does not address the "plain view" issue, it appears uncontested that the items seized were in plain view. Moreover, there is no doubt that the second prong has been met, the incriminating nature of two sawed-off shotguns and handgun would have been "immediately apparent" to the trained police officers.[1] Finally, as this Court has already determined, the firearms were viewed by officers who were lawfully present pursuant to a valid search warrant. Accordingly, the Court finds that even if probable cause was lacking to authorize a search for weapons, the plain view exception would apply to validate the seizure of these items.

▪ As a final consideration, even assuming *arguendo* that the search warrant were found defective as lacking in probable cause, the government argues that the items seized should not be excluded because the law enforcement officers were acting in good faith reliance on a facially valid search warrant. *See United States v. Leon,* 468 U.S. 897, 920–21, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), *reh'g denied,* 468 U.S. 1250, 105 S.Ct. 52, 82 L.Ed.2d 942 (1984). Under the good faith reliance exception, exclusion of evidence is improper when the officers acted in objective, good faith reliance on a facially-valid warrant. *See id.* The Supreme Court in *Leon,* however, found that there are four specific scenarios in which the good faith reliance exception does not apply:

(1) if the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;

(2) if the issuing magistrate failed to act in a neutral and detached fashion and merely served as a rubber stamp for the police;

(3) if the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, or where the warrant application was supported by nothing more than a bare bones affidavit; and

(4) if the warrant was facially deficient in that it failed to particularize the place to be searched or the things to be seized.

*Allen,* 168 F.3d at 303 (citing *Leon,* 468 U.S. at 914–15, 104 S.Ct. 3405).

Defendant maintains that the third scenario quoted above exists in the case at bar. The Court disagrees. As discussed previously, the affidavit prepared by Officer Kendall is *not* a "bare bones" affidavit nor is it "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." The affidavit contained specific factual assertions emanating from two independent sources relating to defendant Beard's extensive involvement in drug trafficking and dealing. One informant was identified as Angela Akins, the girlfriend of the deceased who logically would have known the identity of

---

1. The United States Supreme Court has equated "immediately apparent" with "probable cause." *Texas v. Brown,* 460 U.S. 730, 741, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). It does not mean that a police officer "knows" that certain items are contraband or evidence of a crime. *Id.* Rather, it means that the officer must have "probable cause to associate the property with criminal activity." *Id.* at 741–42, 460 U.S. 730, 103 S.Ct. 1535, 75

L.Ed.2d 502. (quoting *Payton v. New York,* 445 U.S. 573, 587, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)). Indeed, the Supreme Court has recognized that "the phrase 'immediately apparent' was very likely an unhappy choice of words, since it can be taken to imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary for an application of the 'plain view' doctrine." *Id.*

the deceased's drug supplier. The other informant, although anonymous, corroborated Ms. Akins's information by providing further indicia that defendant Beard was heavily involved in drug-related activities. Accordingly, this Court finds that even assuming *arguendo* that the affidavit were found to be lacking in probable cause, the good faith exception to the warrant requirement would apply. The items seized need not be suppressed.

In summary, the Court holds that under the totality of the circumstances the affidavit at issue does support a finding of probable cause to search defendant's residence. Even if the affidavit were found to support a determination that probable cause existed to search for drugs or drug records and not for weapons, the plain view exception to the warrant requirement would apply to validate the seizure of firearms. The Court further holds that even if the warrant were found to be wholly lacking in probable cause the items seized may not be excluded from evidence because the executing officers were acting in good faith reliance on a facially valid search warrant. In view of the foregoing analysis, the Court will deny defendant's motion to suppress evidence.

## *ORDER*

**NOW, THEREFORE, IT IS HEREBY ORDERED** that defendant Odell Beard's motion to suppress evidence filed May 7, 1999 is **DENIED.**

**SO ORDERED.**